ARTHUR L. HENRY AND LARRY G. DAVIS *v*. STATE OF INDIANA.

[No. 177S7.  Filed July 21, 1978.]

*Sheldon H. Cohan*, of Gary, for appellants.

*Theodore L. Sendak*, Attorney General, *Terry G. Duga*, Deputy Attorney General, for appellee.

DEBRULER, J.—Appellants appeal convictions of unlawful dealing in a controlled narcotic substance, Ind. Code § 35-24.1-4.1-1 (Burns 1975) repealed October 1, 1977, arising from their attempt to sell three grams of heroin to an undercover policeman in a rural Lake County restaurant parking lot. They raise the following issues:

(1) Whether the State was improperly allowed to amend the information at the commencement of trial;

(2) Whether the trial court improperly refused to implement a plea bargain arrangement arrived at on the first day of trial;

(3) Whether the police lacked probable cause to set in motion a plan to entrap appellants;

(4) Whether a packet of heroin was illegally seized from appellants' automobile;

(5) Whether Davis was entitled to a separate trial;

(6) Whether two exhibits consisting of bagged heroin were inadmissible because of the lack of a proper chain-of-custody foundation and because one was immaterial;

(7) Whether the trial court properly instructed the jury upon accessory status and liability;

(8) Whether the trial court erred in allowing the jury to assess appellants' sentences, and whether the verdicts were tainted by juror misconduct; and

(9) Whether the evidence was sufficient:

    (a) to establish Davis' guilt;

    (b) to negate the statutory exceptions and exemptions, and

(c) to negate the defense of entrapment.

Appellants were arrested in a restaurant parking lot in Hammond after a heroin sale to an undercover Lake County police officer. The sale came about as follows. Officer Lopez, the undercover agent, was told by Kenneth Wilder, a narcotics informant who died prior to trial, that appellant Henry dealt in heroin. Lopez had Wilder telephone Henry to arrange a sale of heroin to Lopez. During the conversation Henry agreed to sell a "spoon" of heroin for four hundred dollars, and to meet Wilder and Lopez in the restaurant parking lot.

Appellants, Henry and Davis, appeared at the lot in a car driven by Davis. Wilder and Lopez approached the car; Wilder introduced Lopez to Henry and vouched for Lopez. Henry asked Lopez if he was a policeman. Lopez denied that he was, and Henry said, "Good, we can do business." He told Lopez that if Lopez was satisfied with his heroin they might arrange a weekly sale.

Lopez and Wilder returned to their own car, parked next to Henry's. Henry came to Lopez's car and handed him a clear plastic bag containing brown powder. Lopez told Davis that he believed that the bag had been "hit", that it was not full spoon. Davis told him that the bag constituted a full spoon of heroin. Lopez took the bag and told Henry and Davis that he would get the money from his trunk. The opening of his trunk signaled the assembled law enforcement personnel to arrest appellants. Davis put his car in reverse and backed up, forcing Lopez to get out of his way. He was stopped after moving a few feet by an officer who blocked his path with another car. After appellants were placed in custody their car was searched; a cigarette package containing two small plastic bags of heroin were found in the car and seized.

The substance in the bag given by Henry to Lopez proved under analysis to be heroin diluted in some other substance, of an aggregate weight of 3.158 grams. The substance in the

bags hidden in the cigarette package was also heroin; the record does not indicate in what amount.

## I.

Appellants in the original information were charged with selling "0.315g." of heroin and after the jury was selected the State was permitted to amend the information to show "3.15g." over objection. A statute, Ind. Code § 35-3.1-1-5, (Burns 1977 Supp.) governs such amendments and in subsection (c) thereof provides:

"(c) Upon motion of the prosecutor the court at any time before, during or after the trial permit an amendment to the indictment or information in respect to any defect, imperfection or omission in form which does not prejudice the substantial rights of the defendant."

The amendment permitted was one of form only. The amendment was not essential to the charging of a crime, and after the amendment all of the same defenses remained available as before. *Owens* v. *State,* (1975) 263 Ind. 487, 333 N.E.2d 745; *Souerdike* v. *State,* (1951) 230 Ind. 192, 102 N.E.2d 367. Here the amount of the drug was not an element, but the statute under which appellants were charged distinguishes for sentencing purposes between more than and less than ten grams. Here the change from "0.315" to "3.15" grams did not expose appellants to a greater penalty as both measures are less than ten grams.

Subsection (e) of the same governing statute provides:

"(e) Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the crime charged; nor may an indictment or information be amended after arraignment for the purpose of curing a failure to charge or state a crime or legal insufficiency of the factual allegations."

This amendment did not contravene this provision as it did not change the theory of the prosecution, the identity of the crime, or cure any legal insufficiency of factual allegations.

Appellants contend that the amendment was prejudicial in that they knew that a "spoon" of heroin weighed considerably more than 0.315 grams and that they intended to rely on this discrepancy to help substantiate their defense. It would have been apparent at trial that the discrepancy was nothing more than the product of a typographical error on the part of the State in preparing the pleading. The decimal point had simply been put in the wrong place. We do not believe that the loss of the opportunity to show this type of error was prejudicial to the substantial rights of appellants.

## II.

On the morning of the first day of trial, counsel approached the trial judge and told him that they had arrived at an agreement which would result in a sentence of four years for appellant Henry and dismissal of charges against Davis. The trial judge was not receptive to this proposal, referring counsel to the court's rule that plea agreements are required to be submitted two weeks ahead of trial. The only record of this encounter exists in an affidavit of defense counsel attached to the motion to correct errors. The trial judge affirmed the accuracy of this affidavit in ruling on such motion. Affiant therein states that the court "refused to accept said plea agreement" and appellants in their brief state that the court "refused to permit" the agreement. Irrespective of counsel's characterizations of the court's actions on the occasion, we do not regard such actions as an appealable ruling. There was no request for the court to rule on any matter, but only to express his general attitude toward and opinion of counsel's agreement.

## III.

Appellants submitted a pre-trial motion challenging the existence of probable cause to set in motion a plan to entrap them. The trial court conducted a hearing and denied the motion. In *Hardin v. State*, (1976) 265 Ind. 635, 358 N.E.2d 134, this Court relieved the State

of the burden of this probable cause showing. That case was decided after the motion to correct errors was denied by the trial court in this case. We are, therefore, faced with the question of whether *Hardin* should be applied retroactively in this case. We conclude that this issue should be decided on a case by case basis and that where as here the existence of entrapment probable cause was a main and direct issue in the trial court litigation and was relied upon by the defense in attempting to establish a bar to the prosecution, it would be fundamentally unfair to hold *Hardin* retroactive, and to resolve this issue against appellant on that basis. *Safarik* v. *Udall*, (D.C. Cir. 1962) 304 F.2d 944; *Commonwealth* v. *Barnes,* (1976) Mass. Adv. Sh. 72, 340 N.E.2d 863; *State* v. *Hunt* (1973) 283 N.C. 617, 197 S.E.2d 513; *State* v. *Saylor,* (1966) 6 Ohio St. 2d 139, 216 N.E.2d 622.

We turn then to determine if there was evidence to support the existence of probable cause to set in motion the entrapment scheme. Narcotics agent Lopez who executed the planned buy from appellants was guided by information provided him by the informant Wilder that Henry was a heroin dealer and that Wilder bought drugs from Henry. If Lopez had personal knowledge of these facts they would have been sufficient to show probable cause; however, he had no such personal knowledge but was relying upon facts provided him by Wilder. The issue before us then becomes whether there were objective reasons for Lopez to believe that Wilder was credible.

According to the evidence Lopez met Wilder for the first time on the day the telephone call was made to Henry setting up the buy. Lopez however knew Wilder by reputation as a dealer and had been introduced to him by another narcotics agent. Prior to making the call to Henry, Wilder took Lopez to a house to make a buy. They were admitted into the house, but the buy did not materialize because the person in the house recognized Lopez as a police officer and ordered them out. However Lopez had independent confirmation that this person was dealing in drugs. At the time Wilder telephoned

Henry, Lopez heard Wilder set up the buy and heard the party on the other end of the line agree to meet and evidence a willingness to sell. Based upon the events of the day, including the fact that Wilder gave reliable information regarding the unsuccessful buy, Lopez had reasonable ground to believe that Wilder was a reliable source. Consequently the requisite probable cause was shown by the evidence and there was no error in the court so finding.

## IV.

Appellants assert as error the overruling of their motion to suppress additional heroin taken from appellant's car during a search. After they were arrested and placed firmly in custody, their unoccupied car was left standing in the restaurant parking lot. The police searched it without a warrant and found a cigarette package on the floor in front on the driver's side containing additional bindles of heroin. Appellants contend that the police had no cause to arrest them and therefore the search of the car cannot be justified as incident to a lawful arrest. While we consider the probable cause to be ample, this search could not in any event be justified as incident to a lawful arrest, as items within the car at the time of the search were not in an area under appellants' control. *Chimel* v. *California*, (1969) 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

However, under certain circumstances the United States Supreme Court has sanctioned, as consistent with Fourth Amendment standards, the search of a car upon probable cause to believe that it contains seizable contraband or evidence of a felony. Such circumstances obtain when a car is lawfully stopped or is found stationary in a public place and is not immobilized. *Chambers* v. *Maroney*, (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll* v. *United States*, (1925) 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. This Court has followed suit. *Brown* v. *State*, (1976) 264 Ind. 484, 346 N.E.2d 559.

The scope of such searches remains limited. The police may not intrude into areas of privacy within the car in which items sought could not be located. *Cardwell* v. *Lewis*, (1974) 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325. And a search of this type is subject to further constitutional restraints if the police have seized the car from private property without a warrant. *Coolidge* v. *New Hampshire*, (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. If such probable cause existed here, then the search of appellants' car was justified. The evidence to support the existence of probable cause is that Wilder, the informant, told officer Lopez that Henry customarily carried his sale goods in a cigarette package. He also described the kind of car in which Henry would arrive. When Wilder's information that Henry would be prepared to sell to Lopez proved true, Lopez had probable cause to believe Henry was carrying extra heroin in a cigarette package, and when such heroin was not found on Henry's person, the police had probable cause to believe that it must be in the car. The search was therefore valid and the evidence properly admitted.

## V.

In the trial court Davis sought and was denied a separate trial. Such denial is asserted as error here. The motion for severance is governed by statute, Ind. Code § 35-3.1-1-11, (Burns 1975) which requires *inter alia* that such motions be granted where appropriate to promote a fair determination of guilt or innocence. Davis contends that he was prejudiced in the joint trial with Henry because the evidence of Henry's guilt was much stronger than the evidence of his own guilt and because of the presence in the evidence of Henry's self-incriminatory statements. The presence of such evidence is claimed to have subjected him to the risk of being determined guilty by association. This effect is present to some degree in most joint trials. *Frith* v. *State*, (1975) 263 Ind. 100, 325 N.E.2d 186. The evidence

presented to the jury in this case established very clearly defined and distinctive roles for each of the defendants. There is no confusion over who may have spoken certain words or may have done a certain act. The jury would have had no difficulty in keeping these distinctive roles in mind as they received the evidence and later deliberated upon their verdict.

Appellant Davis also contends that he was prejudiced in the joint trial when Henry appeared in court one morning under the influence of intoxicants. The trial court put him in a holding cell. The actual trial was not scheduled to commence until 1:00 p.m., and the jury did not appear until that time. By such time, Henry had been examined by the judge and found competent to testify. There is no indication in the record that the jury viewed Henry in a state of drunkeness and therefore there could have been no prejudice to the fairness of trial flowing therefrom. For the foregoing reasons we find that the trial court committed no error in denying a separate trial to appellant Davis.

## VI.

Appellants contend that the trial court erred in admitting State's exhibits 1 through 5, the "spoon" and miscellaneous packaging, and exhibits 6 through 11, the cigarette package and heroin found inside the car, for the reason that no chain-of-custody foundation was established for them. In order to establish such a foundation the State must "establish complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian." *Graham* v. *State*, (1970) 253 Ind. 525, 530, 255 N.E.2d 652, 654. Officer Lopez took exhibits 1 through 5 from Henry and gave them to Detective Watson. Lieutenant Kuzma found exhibits 6 through 11 in the car and gave them to Detective Watson. Watson placed all of these exhibits in his jacket pockets and carried them to police headquarters. By the time he reached headquarters he also had a packet of

suspected cocaine in a paper package which he had placed in his pants pockets. At headquarters he put items 1 through 5 and items 6 through 11 in self sealing envelopes, along with a card identifying the contents. Lopez and Watson signed and dated the envelopes. The envelopes could not be opened without ruining the seal.

Watson took the envelopes home with him and kept them overnight in his bedroom dresser. On the next day he took them to the laboratory for testing. There he delivered them to a clerk who stamped them and locked them in a safe. The chain-of-custody is complete thereafter and is not challenged.

Appellants complain that there is a likelihood that Watson may have gotten the evidence from the two separate investigations mixed up. However, he testified that he had the heroin in plastic packages in his jacket and the suspected cocaine in a paper package in his pants. We find there was very little likelihood of confusion under these circumstances.

Appellants also complain of Watson's conduct in taking the envelopes home overnight. The purpose of the Graham rule is to safeguard against tampering, confusion and substitution. While in Watson's possession at home, the exhibits were locked in sealed envelopes which were not opened, according to the testimony, until they reached the laboratory. There was no danger of tampering or loss during the time when the envelopes were at Watson's home.

Appellants challenge the admission of the packets of heroin taken from the car, as part of this argument, on the basis that they were not relevant to the charge made, and on the basis that they imputed an uncharged crime, namely simple possession of heroin. Where as here, the entrapment defense is raised, the burden is on the State to show that the accused "was not innocently lured and enticed to commit the illegal act." *Gray* v. *State*, (1967) 249 Ind. 629, 634, 231 N.E.2d 793, 796. The presence of the additional heroin in the car supports the inference that appellants were ready, willing and able to engage in the sale of

drugs if the opportunity to do so presented itself, and that they were not induced by the representations of Lopez and Wilder to commence illegal activity.

## VII.

The trial court instructed the jury on accessory status by reading the accessory before the fact statute, Ind. Code § 35-1-29-1 (Burns 1975) repealed October 1, 1977, and added this further statement:

"The presence of a person at the scene of the commission of the crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

If, in the commission of a crime it is shown by the evidence beyond a reasonable doubt that the persons present acted in union, any act of one person is attributable to all persons and a person is responsible for the acts of his companions as well as his own. Under these circumstances it is not essential that actual participation of each of the defendants in each element of the crime charged be established."

Appellants tendered the following final instruction, which was refused:

"You are instructed that the mere presence of the defendants at the time and place of a crime alleged to have been committed by the defendant's companion would not of itself render a defendant guilty of the offense charged."

Appellants objected to the court's instruction contending that without supplementation by their tendered instruction, it misstated the law. However, in *Schmidt* v. *State*, (1970) 255 Ind. 443, 265 N.E.2d 219, this Court held an instruction virtually identical to the court's instruction here to be a correct and complete statement of the law.

## VIII.

Appellants contend that the trial court improperly permitted the jury to assess the penalty against them, and in

this regard allege an impropriety in the manner in which the jury determined their sentences. They concede that Ind. Code § 35-24.1-4.1-1 (Burns 1975) repealed October 1, 1977, imposes a determinate sentence, and that Ind. Code § 35-8-2-1 (Burns 1975) repealed October 1, 1977, requires such penalties to be assessed by the jury, but urge that this procedure deprives them of due process and equal protection. This contention is unsupported by authority or argument and we cannot pass upon its merits.

Appellants attached an affidavit to their joint motion to correct errors in which their counsel related being approached after trial by two jurors who described the manner in which the jury arrived at the sentences imposed. Even assuming that the trial court was bound to accept the hearsay averments of the affidavit, c.f. *Merry* v. *State,* (1975) 166 Ind. App. 199, 335 N.E.2d 249, the use of the jurors' testimony, first or second hand, to demonstrate improprieties in the method by which the jury reached its verdict constitutes impeachment of that verdict by the jurors, which is not permitted. *Grigsby* v. *State,* (1978) 267 Ind. 465, 371 N.E.2d 384; *Wilson* v. *State,* (1970) 253 Ind. 585, 255 N.E.2d 817.

## IX.

Appellant Davis contends that the evidence was insufficient to warrant the verdict against him in that there was no evidence that he possessed the heroin, or that he intended to deliver it. In treating this issue we do not weigh the evidence but review it to determine whether it had sufficient probative value to warrant the determination of guilt beyond a reasonable doubt. The evidence discloses that after the buy was set up, both Davis and Henry appeared at the rendezvous in a car driven by Davis. Henry got out of the car and approached Lopez and talked with him. Henry then returned and talked to Davis in the car. One officer who was staking out the parking lot testified that it appeared to him that Davis passed something to Henry.

Henry then took a packet of heroin and gave it to Lopez. Lopez walked over to the car at this point and told Davis that he thought the bag looked as though it had been "hit." Davis replied that the bag had not been hit; that it was all there and that it was good. Thereafter as the police moved in to complete the arrest, Davis put the car in reverse and tried to escape by pulling his car out, but a police car pulled in and stopped him. The additional packets of heroin were found on the floor of the car in front of the driver's seat. Possession of a drug is shown where there is an intent and capability to maintain control and dominion. *Thomas* v. *State*, (1973) 260 Ind. 1, 291 N.E.2d 557. The jury could find possession and an intent to deliver from the facts. The drugs were being transported in the car being driven by Davis. The heroin was taken from the car by Henry after conferring with Davis. Davis stated to Agent Lopez that nobody "hit" the bag and that it was a full bag. Such statement under the circumstances implies a past custody and knowledge of it and knowledge of the nature of the transaction and the substance. We find the evidence sufficient to support appellant Davis' conviction.

Appellants next contend that the evidence was insufficient in that the State failed to negative exceptions in the statute. The statute expressly relieves the State of the duty to negate "exemptions or exceptions." Ind. Code § 35-24.1-5-6. However, appellants contend further that since the State pleaded that they were without lawful authority to possess the controlled substance it should be required to so prove. This argument was rejected by the Court in the case of *Chrisp* v. *State*, (1978) 267 Ind. 673, 372 N.E. 2d 1180.

Both Henry and Davis challenge the sufficiency of evidence of predisposition. The predisposition of Henry to sell heroin and to possess it for such purpose was shown by the fact that he had an extra quantity of drugs in the car and by his own statement to Officer Lopez at the

time of the meeting in the parking lot that they could do regular business in the future. We are satisfied that the evidence was sufficient to show that appellant Henry was not "innocently lured and enticed to commit the illegal act." *Gray* v. *State, supra.* Davis' contention that there was no evidence of his predisposition to commit this offense is correct, however, at the same time the police did not tender any inducement to him to carry out this criminal transaction. If he was persuaded to engage in this illegal line of business, such persuasion did not come from government agents and consequently the evidence by the State was sufficient that there was no entrapment of appellant Davis. *Thompson* v. *State,* (1972) 259 Ind. 587, 290 N.E.2d 724.

The convictions are affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 379 N.E.2d 132.