**John Foster FYOCK, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–681A33.**

Court of Appeals of Indiana, Third District.

Nov. 23, 1981.

Rehearing Denied Jan. 7, 1982.

Gregory L. Fumarolo, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Defendant John Foster Fyock appeals from his conviction in a trial to the court for possession of a controlled substance, a class D felony. He was sentenced to two years imprisonment. On March 19, 1981 his motion to correct errors was denied and he subsequently perfected this appeal. Fyock presents the following issues:

(1) whether there was probable cause to effect the warrantless arrest of Fyock;

(2) whether Fyock's Fourth Amendment rights were violated by the search and seizure of a sock on the rear floor of the car Fyock was driving; and

(3) whether there was sufficient evidence to support the conviction.

The record reveals that on the night of June 29, 1980, Roger Ember, an off-duty Fort Wayne police officer, observed a suspect remove an object from the gas tank area of a parked 1963 Chevrolet. The subject then carried this object, observed as a "sock type thing," to the driver's window of the car where Fyock was sitting. As Ember approached the vehicle, he noticed three other occupants passing a cigarette and detected the aroma of marijuana. Ember also saw Fyock handling his wallet and the subject pass the sock into the auto. Ember immediately charged around the front of the car, grabbed the suspect, identified himself as a police officer, and informed Fyock and the subject standing outside of the car that they were under arrest. Ember then observed a package of what he believed to be marijuana sitting on the front seat next to Fyock.

Immediately after Ember identified himself, Fyock quickly started the car's engine and put it into gear. At the same time, the subject and the three passengers fled the scene. As Fyock began to move the car forward, Officer Ember pulled his gun and ordered Fyock to stop. Ember then pulled Fyock from the car and patted him down, finding no weapons or contraband. Two or three minutes passed before other officers arrived and saw Fyock spread-eagled against the car and later handcuffed. One of the officers then used his flashlight and looked into the car. The officer observed two sweatsocks lying on the rear passenger floor. One of the socks had a lump in the toe although it was impossible to see what was inside. The officer felt the sock and opened it, finding what were later confirmed to be tablets of methaqualone.

■ The first two issues presented here question the admissibility of the sock's contents into evidence. Initially, it must be recognized that since the search here was without a warrant, the State has the burden to justify the search under some exception to the Fourth Amendment warrant requirement. *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133. In a case such as this one, where the defendant is arrested in his car, two such exceptions may be applicable. The warrantless search may be incident to the arrest, *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, or subject to the "auto exception," *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. In the case of a search incident to an arrest, the warrantless search must be necessitated by circumstances existing at the time of the arrest permitting the officer to locate weapons which may be used by the defendant to effectuate his escape or to prevent the destruction of evidence. *Chimel v. California, supra; Paxton et al. v. State* (1970), 255 Ind. 264, 263 N.E.2d 636. To make a valid search under the auto exception, on the other hand, the police must first have probable cause to believe that the auto contains seizable items. This type of search is not based on a concern for police safety or the destruction of evidence, but on the inherent mobility of automobiles. *Chambers v. Maroney, supra;*

*Carroll v. United States, supra; Paxton v. State, supra.*[1]

Fyock attacks the search and seizure of the sock on the rear floor of the car which he was driving as an invalid search incident to his arrest. He bases this contention on the argument that there was no probable cause to arrest him without a warrant. This unlawful arrest then taints any search incident thereto. *See, Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. It appears, however, that there was probable cause for Officer Ember to arrest Fyock without a warrant.

The test for probable cause to make a warrantless arrest is whether the officer possesses knowledge of facts and circumstances sufficient for a reasonable man to believe that the arrestee was or is committing a crime. *Smith v. State, supra,* 256 Ind. at 607, 271 N.E.2d at 136. In the case at hand, Officer Ember observed that the occupants of the auto which Fyock was driving were smoking a cigarette, and he smelled the odor of burning marijuana coming from the car. In addition, Ember saw a packet containing what he believed to be marijuana sitting on the front seat next to the defendant. Ember also testified that he saw a suspect who was "acting suspicious" hand an item to the defendant while the defendant was holding his wallet. Under these circumstances, Ember had probable cause to arrest Fyock.

The fact that the arrest of Fyock was lawful begs the question of whether the search incident to that arrest was also lawful. This latter question, in turn, focuses on the permissible scope of such a search. In dealing with this problem, one is guided by the United States Supreme Court's holding in *Chimel* :

> "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

395 U.S. at 763, 89 S.Ct. at 2040.

Hence, the issue to be resolved in this case is whether the container found on the rear floor of the car was in Fyock's area of immediate control.

The Indiana Supreme Court has dealt with this issue in several similar cases. In *Smith v. State, supra,* the defendant was arrested for a traffic violation. When the defendant stepped out of his car, the police officer turned on his flashlight and noticed certain burglar items in the front seat of the car. The officer seized the items, having earlier been informed of a burglary and assault in the area where the defendant was stopped involving a car similar to the defendant's. On appeal, the Supreme Court upheld the search of the front seat since, at the time of the arrest and search, the defendant was standing in the car doorway and the front seat was in his immediate area of control. *Id.* 256 Ind. at 610, 271 N.E.2d at 138.

The Indiana Supreme Court again confronted a similar problem in *Paxton v. State, supra.* There police stopped a car for reckless driving and arrested the three occupants. All three were then searched and placed in the police car. The police then searched the defendants' car and found contraband. Assuming the arrest was valid, and holding that the reasonableness of· the search and its scope depend entirely on the facts and exigent circumstances then existing, the Court found the search incident to the arrest invalid. *Id.* at 274–275, 263 N.E.2d at 641. The officers had no reason to suspect any danger, and the three suspects could not destroy any evidence from their position in the police car. Hence, the Court determined that the auto was not in the area where the suspects could grab a weapon or destroy evidence.

The same analysis was again used by the Indiana Supreme Court in *Henry; Davis v. State* (1978), 269 Ind. 1, 379 N.E.2d 132. There a drug sale was set up by police undercover agents and informants. When

---

1. For a thorough discussion of both the auto exception search and a search incident to arrest, *see* Berner, *Search and Seizure; Status and Methodology,* 8 Val.U.L.Rev. 471 (1974).

the sale was completed, the defendant was immediately removed from his car, arrested, and placed into custody. Following the arrest, the defendant's car was searched. Although the Court upheld the search under the auto exception, it held that it was not justified as a search incident to the arrest. Once the defendant was placed in custody the items in his car were not within his immediate area of control. *Id.* at 9, 379 N.E.2d at 137.

■ There is a common holding in *Smith, Paxton,* and *Henry* that, once a defendant is removed from his automobile and placed firmly in custody, a determination of whether the items within that auto are within his immediate control depends on the facts and exigent circumstances then existing. As applied to the facts at hand, the search of the rear floor of Fyock's car is not valid as a search incident to his arrest. Fyock was quickly removed from his car, searched, and handcuffed. Fyock was placed firmly in custody. At this point, the rear floor of the auto was not in an area from which Fyock could obtain a weapon or destroy evidence. Indeed, the State presented no evidence that the officers present had reason to fear for their safety or reason to believe that any evidence on the rear floor of the auto was in the defendant's area of control. As a result, the search and seizure of the container was not valid as a search incident to Fyock's arrest.

Discussion of the scope of the search of Fyock's car incident to his arrest is not complete without reference to the recent United States Supreme Court decision in *New York v. Belton* (1981), —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768. In that case, the Court discussed the scope of a search of the interior of an auto incident to the arrest of the occupants of that auto after the occupants were removed from the car. Noting the divergence of opinion regarding the scope of such searches and recognizing a need for a uniform rule, the Court held:

"[T]hat when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contempora-

neous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. . . . Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." (Footnotes and citations omitted.)

101 S.Ct. at 2864.

It is likely that the search and seizure of the sock in Fyock's car would be valid under the *Belton* rationale. The question then becomes whether the holding in *Belton* should be applied to a search conducted over a year earlier in light of the fact that the Indiana Supreme Court, previous to *Belton,* had assigned a more narrow scope to similar searches.

■ This Court has held that the question of retroactive application of new constitutional interpretations is a matter of state law although the United States Supreme Court cases on the subject are enlightening. *Berry v. State* (1974), 162 Ind. App. 626, 321 N.E.2d 207. In this respect, the United States Supreme Court has held that the Constitution neither prohibits nor requires retroactive application of such cases. *Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. Moreover, Indiana frowns on a retroactive application of new constitutional principles unless the cases "are made retroactively, plainly and unequivocally by the United States Supreme Court[.]" *State ex rel. Lawrence v. Morgan Circuit Court* (1967), 249 Ind. 115, at 116, 234 N.E.2d 498, at 498.

■ In view of this authority, the holding in *Belton* cannot be applied to the search of Fyock's car which occurred one year prior to that holding. The Supreme

Court expressed no intent for *Belton* to be applied retroactively, even though it recognized that many earlier decisions had contradicted *Belton.* 101 S.Ct. at 2863. Furthermore, retroactive application of *Belton* is especially difficult in this case where the defendant's rights have arguably been narrowed by that decision. Here Fyock presumably had an expectation, based on the law at the time of the search, that the sock lying on the rear floor of his car could not be searched incident to his arrest. To validate that search based on a case decided one year later and arguably changing the law as it existed at that time is *ex post facto* application. The Indiana Supreme Court has held that the constitutional prohibition against *ex post facto* laws only applies to legislative enactments in criminal matters. *Sumpter v. State* (1976), 264 Ind. 117, 340 N.E.2d 764. Nevertheless, the spirit of *ex post facto* limitations may be violated where interpretations of constitutional liberties are narrowed. As a result, the validity of the search of Fyock's car incident to his arrest must be judged by principles existing at the time of that search.

The next issue is whether the search was valid under the auto exception. Pursuant to the auto exception, police may search an automobile without a warrant where they have probable cause to believe that there are seizable items inside. *Chambers v. Maroney, supra; Carroll v. United States, supra; Paxton v. State, supra.* However, there is some limitation on this exception where the item removed from the auto is a container. *Arkansas v. Sanders* (1979), 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235; *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538; *Bradford v. State* (1980), Ind.App., 401 N.E.2d 77; see, 14 Val.U.L.Rev. 157 (1979).

In *Arkansas v. Sanders*, police arrested the defendant after stopping a taxi in which he was riding. Following the arrest, the police removed a suitcase belonging to the defendant from the trunk of the taxi, having probable cause to believe that it contained marijuana. After removing the suitcase, the police opened it and discovered the expected contraband. The issue presented to the Supreme Court was whether the police need a warrant to search a suitcase in a properly stopped automobile absent any exigent circumstances. In answering this question in the affirmative, the Court refused to extend the auto exception to containers found inside the auto. The reasons for this decision are twofold: (a) a container, unlike an auto, is not inherently mobile once it is seized and (b) one has a greater expectation of privacy in a container than one has in a car. Consequently, the evidence found during the search of the suitcase was excluded.

During the course of its decision, the Court distinguished two types of containers which might not receive the protection accorded the suitcase in *Sanders.* 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13. First in this category are containers whose contents are inferred by their outward appearance. For example, a gun case might reveal that it contains a weapon. Second, the Court notes that containers may not be afforded special protection where the contents are in plain view.

Although the State might concede that . the contents of the sock were not in plain view, it argues that the search of the container does not require a warrant because there is no reasonable expectation of privacy in the contents of a sock as there would be with a suitcase, *Sanders, supra,* or a purse, *Bradford v. State, supra.* In this way, the State is apparently requesting this Court to distinguish between the nature of various containers and the expectation of privacy which may be attached to each. This argument, however, was soundly foreclosed by *Sanders.*

The Supreme Court in *Sanders* distinguished only those containers whose outward appearance betrayed their contents or whose contents were in plain view. It made no provision for containers to which might be connected "lesser" expectations of privacy. More recently, a plurality of the Supreme Court confirmed this interpretation of *Sanders* by holding that all containers not distinguished in *Sanders* must have the same protection:

"What one person may put into a suitcase, another may put into a paper bag. . . . [N]o court, no constable, no citizen, can sensibly be asked to distinguish the relative 'privacy interests' in a closed suitcase, briefcase, portfolio, duffle bag, or box."

*Robbins v. California* (1981), —— U.S. ——, at ——, 101 S.Ct. 2841, at 2846, 69 L.Ed.2d 744.[2]

Additionally, one of the dissenters in *Robbins* agreed "that the Fourth Amendment cannot differentiate between 'an orange crate, a lunch bucket, an attache case, a dufflebag, a cardboard box, a backpack, a tote bag, and a paper bag.'" 101 S.Ct. at 2856 (Stevens, J., dissenting); *see also, Arkansas v. Sanders*, 442 U.S. at 772, 99 S.Ct. at 2597 (Blackmun, J., dissenting). This language leads to the conclusion that the nature of the container in no way affects the expectation of privacy accorded the contents of that container unless the contents of the container are inferred by its outward appearance or unless those contents are in plain view.

■ In the case at hand, there is no evidence to indicate that the outward appearance of the container betrayed its contents or that those contents were open to plain view. In fact, one police officer testified that, until he opened the container, it was impossible to observe the container's contents. As such, the police were required by *Sanders* to obtain a search warrant before opening the container. The ease with which the container could have been sealed and held until a search warrant was obtained only enhances this result. The only exigent circumstances offered by the State to justify the warrantless search of the container is that it was incident to Fyock's arrest. However, this Court has already determined that the search of the container was not a valid search incident to Fyock's arrest because the container was well out of Fyock's area of control. Since the State presents no other justification for the war-

rantless search challenged here, the search was a violation of Fyock's Fourth Amendment right to be free of illegal search and seizure by government authorities and the fruits of that search must be excluded and the decision below must be reversed and remanded for a new trial. Since the decision is reversed, the defendant's third contention regarding sufficiency of the evidence need not be addressed.

Reversed and remanded.

STATON, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I dissent. The majority acknowledges that under *New York v. Belton* (1981), —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 the search in the present case was permissible. It also acknowledges that the decision can be applied retroactively without impinging upon the prohibition against *ex post facto* laws.

I do not dispute the holding in *State ex rel. Lawrence v. Morgan Cir. Ct.* (1967), 249 Ind. 115, 234 N.E.2d 498 and similar cases which I read to declare an unwillingness to invalidate a prior court proceeding upon the basis of a newly announced constitutional interpretation. Under those circumstances it is often appropriate to deny the retroactive application in the absence of some expression from the court to the contrary.

We are not confronted here with such a situation. Instead we deal with the exclusionary rule. In *Belton* the Court reiterated the prophylactic purpose of that rule in guiding police officers in their conduct while effecting searches and arrests. That purpose is not served by a reversal of Fyock's conviction. Our application of the *Belton* rule to Fyock is no more a prohibited retroactive application than was the Supreme Court's own application of the rule it announced to Belton.

---

**2.** The container in *Robbins* was opaque plastic wrapped and taped around a brick of marijuana. The Court in *Robbins* invalidated a war-

rantless search of that container. 101 S.Ct. at 2847.

Fyock also challenges the sufficiency of the evidence to sustain the conviction. I agree that the evidence fails to establish his possession of the methaqualone since it appears the officer interrupted the transaction before Fyock secured possession. The evidence clearly, however, establishes his attempted possession, an offense which carries the same penalty. IC 35–41–5–1. I would therefore remand with instructions to vacate the conviction for possession and find the defendant guilty of attempted possession. Since Fyock was given the basic two year sentence for a class D felony, the judgment should in all other respects be affirmed.