## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.


FILED
May 28 2015, 9:02 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Phillip Killebrew,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 28, 2015

Court of Appeals Case No.
49A02-1409-CR-648

Appeal from the Marion Superior Court

The Honorable Steven R. Eichholtz, Judge

The Honorable Peggy Ryan Hart, Commissioner

Cause No. 49G20-1308-FC-52802

**Brown, Judge.**

[1] Phillip Killebrew appeals his conviction for possession of a narcotic drug as a class C felony. Killebrew raises two issues which we revise and restate as:

  I.   Whether the trial court abused its discretion by admitting evidence obtained following the stop of his truck; and

  II.  Whether the evidence is sufficient to sustain his conviction.

We affirm and remand.

## *Facts and Procedural History*

[2] On August 11, 2013, Indianapolis Metropolitan Police Officer Carol Carson was working the late shift and responded to a run to assist Officer Rod Bradway with the search of a female. As Officer Carson approached, Officer Bradway jumped up and down, pointed toward a grey Dodge pickup truck that was pulling out onto Eagle Creek Parkway, and yelled: "Stop that truck, they are firing shots." Transcript at 41. Officer Carson observed the truck pulling away, followed the truck northbound, and waited for the arrival of assisting units. Officer Carson saw Sergeant Rivers approaching, activated her overhead lights, and stopped the truck.

[3] Officer Carson approached the driver's side, looked inside, and saw a handgun in plain view between the driver's seat and the console. Officer Carson handcuffed Killebrew, the driver and registered owner of the truck. Sergeant Rivers went to the passenger side and handcuffed the passenger, Michael Killebrew ("Michael").

[4] At some point when Killebrew and Michael were handcuffed, Officer Aaron Trotter arrived, went to the truck, and observed the handgun in between the driver's seat and the center console. He also leaned into the vehicle and observed what he believed to be a baggie of heroin on top of some papers in a storage tray in the center console. Officer Trotter did not have to open anything or move anything to see the baggie, and then searched for more guns or narcotics, opened the glove box, and discovered additional guns.

[5] While Officer Trotter was at the stop, control operators informed the officers at the scene that a bullet had struck a residence on Gamay Lane which was about thirty or forty feet from Eagle Creek Parkway. Later analysis revealed that the revolver discovered in the glove box was the firearm that shot the bullet into the residence on Gamay Lane.

[6] The State charged Killebrew with possession of a narcotic drug in excess of three grams as a class C felony and possession of a narcotic drug while in possession of a firearm as a class C felony. On July 29, 2014, the court held a bench trial. Officer Trotter testified without objection that he observed a baggie of heroin and a handgun in Killebrew's truck. Defense counsel later objected to the admission of anything seized from inside the truck because there was nothing to warrant the actual stop of the truck, and the court overruled the objection. Defense counsel also objected to the admission of the guns found in the truck on the basis of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The court overruled the objection.

After the State rested, Killebrew's counsel moved for a judgment on the evidence, and the court denied the motion. Killebrew testified that he was not the only person who had access to his vehicle, that his cousin drove his truck three or four times a week, and that he was not aware there was heroin in the truck. On cross-examination, Killebrew testified that he was aware there were guns in the truck on the night he was stopped. On redirect examination, Killebrew testified that he was not familiar with heroin and had never used drugs.

The court found Killebrew guilty as charged and merged Count I, possession of a narcotic drug as a class C felony, into Count II, possession of a narcotic drug while in possession of a firearm as a class C felony. The court sentenced Killebrew to six years with two years suspended, two years in the Department of Correction, and two years in the Marion County Community Corrections Program.

## Discussion

### I.

The first issue is whether the trial court abused its discretion by admitting evidence obtained following the stop of Killebrew's truck. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g*

*denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied, trans. denied*. Also, we may affirm a trial court's decision to admit evidence seized as a result of a search based on any legal theory supported by the record. *Edwards v. State*, 724 N.E.2d 616 (Ind. Ct. App. 2000), *trans. denied*.

[10] Killebrew argues that the search was illegal under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Killebrew asserts that he objected to the admission of the physical items of the heroin and guns on the grounds they were illegally seized when the State offered them at trial. The State contends that Killebrew waived his claim that the heroin and the two firearms in the glove box were discovered in an unconstitutional search because he did not object to Officer Trotter's testimony about discovering the heroin and the firearms. Even assuming that Killebrew did not waive this issue, we cannot say that reversal is warranted.

[11] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Thus, the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government. *Patterson v. State*, 958

N.E.2d 478, 482 (Ind. Ct. App. 2011). "Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). A search without a warrant requires the State to prove an exception to the warrant requirement applicable at the time of the search. *Id.*

[12] Killebrew acknowledges that Officer Carson saw the handgun between the driver's seat and the console without conducting a search, but argues that the guns in the glove box and the heroin were not discovered until Officer Trotter leaned into the truck and conducted his search. He asserts that Officer Trotter was not lawfully located in the truck when he saw the heroin and he did not have a lawful right of access to it, and that the officers did not have probable cause for an arrest, but acknowledges that the officers had reasonable suspicion to pull the truck over and freeze the situation.

[13] The State argues that the officers had probable cause to search Killebrew's truck for evidence of a crime as soon as Officer Carson saw the handgun wedged between the driver's seat and the console. The State contends that once the report of gunshots fired from Killebrew's truck was corroborated by the sight of a firearm within reaching distance of the driver's seat, there was probable cause to believe that the truck contained evidence of criminal recklessness and criminal mischief.

[14] A search falls within the automobile exception when a vehicle is readily mobile and there is probable cause to believe it contains contraband or evidence of a crime. *Meister v. State*, 933 N.E.2d 875, 878-879 (Ind. 2010) (citing *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S. Ct. 2013 (1999)). Where there is probable cause to search a vehicle, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been obtained. *Id.* The automobile exception is grounded in two notions: "1) a vehicle is readily moved and therefore the evidence may disappear while a warrant is being obtained, and 2) citizens have lower expectations of privacy in their vehicles than in their homes." *State v. Hobbs*, 933 N.E.2d 1281, 1285 (Ind. 2010) (citing *California v. Carney*, 471 U.S. 386, 391, 105 S. Ct. 2066 (1985)). The United States Supreme Court has specifically stated that when there is probable cause that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment. *Meister*, 933 N.E.2d at 879 (citing *California v. Acevedo*, 500 U.S. 565, 569, 111 S. Ct. 1982 (1991)); *see also Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.") (citing *Carney*, 471 U.S. at 393, 105 S. Ct. 2066). Also, "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Cheatham v. State*, 819 N.E.2d 71, 75 (Ind. Ct. App. 2004) (quoting *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S. Ct. 3079, 3080 (1982)).

[15] Further, "[f]acts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate." *Meister*, 933 N.E.2d at 879 (quoting *Masterson v. State*, 843 N.E.2d 1001, 1004 (Ind. Ct. App. 2006), *trans. denied*). Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime. *Esquerdo v. State*, 640 N.E.2d 1023, 1029 (Ind. 1994).

[16] The record reveals that as Officer Carson approached Officer Bradway to assist with the search of a female, Officer Bradway jumped up and down, pointed at Killebrew's truck, and yelled: "Stop that truck, they are firing shots." Transcript at 41. Officer Carson eventually stopped the truck and observed a handgun in plain view from outside the vehicle. At some point when Killebrew and Michael were handcuffed, Officer Aaron Trotter arrived and observed a handgun in between the driver's seat and the center console. He also leaned into the vehicle and observed a baggie of heroin on top of some papers in a storage tray in the center console without having to open or move anything. Officer Trotter then searched for more guns or narcotics, opened the glove box, and discovered additional guns. We note that, in his argument under the Indiana Constitution, Killebrew states: "One handgun had already been seen in plain view. *That gave officers the probable cause they needed for a search warrant to see if other evidence of the shooting would be found in the truck*, but no circumstances

existed for them to search the truck without a search warrant." Appellant's Brief at 7 (emphasis added).

[17] Under the circumstances, we conclude that probable cause existed for a reasonably prudent person to believe that a search of the vehicle would uncover evidence of a crime, and that the automobile exception to search warrant requirement applies. *See Johnson v. State*, 766 N.E.2d 426, 431-433 (Ind. Ct. App. 2002) (holding that the police had probable cause to search under the hood of a vehicle where police responded to a report of shots fired and an officer was informed by witnesses of a description of one of the shooters, the vehicle, and that a handgun had been stashed under the hood of the car, and police subsequently stopped a vehicle and driver matching the description given by the witnesses), *trans. denied*; *Thurman v. State*, 602 N.E.2d 548, 554 (Ind. Ct. App. 1992) (holding that the marijuana was in open view, that there was no search or initial intrusion into a constitutionally protected area, and that the marijuana was lawfully discovered and admissible, and noting that "[o]nce an item is discovered in open view, a search warrant or an exception thereto is required prior to the item being seized" and that "[i]n the case before us, the marijuana was properly seized without a warrant pursuant to the 'automobile exception'") (quoting *Henry v. State*, 269 Ind. 1, 9, 379 N.E.2d 132, 137 (1978)), *trans. denied*; *Zavesky v. State*, 558 N.E.2d 1124, 1127 (Ind. Ct. App. 1990) (holding that "with the plain view observation of the television set and slot machine, the police had probable cause to believe the van contained the fruits of

a crime; therefore, the automobile exception to the search warrant requirement applied").

[18] Killebrew also argues that the search of the vehicle violated Article 1, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[19] "Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution." *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006), *adhered to on reh'g*, 848 N.E.2d 278 (Ind. 2006). "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Id.* "We will consider the following factors in assessing reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[20] Killebrew concedes that law enforcement had a reasonable suspicion that a violation had occurred because they had a report of shots being fired from his truck. He argues that the degree of intrusion was fairly high because Officer Trotter searched his truck while he was handcuffed on the side of the road, and that law enforcement did not have a need to search his truck without securing a search warrant.

[21] In addition to the automobile exception to the warrant requirement, the State argues that the search of Killebrew's truck was done incident to his arrest because Killebrew had been removed from the truck and handcuffed before Officer Trotter searched it. The State asserts there was probable cause to make an arrest and that the factors of degree of suspicion and law enforcement needs to preserve evidence weigh in favor of a search incident to arrest.

[22] We consider "the degree of concern, suspicion, or knowledge that a violation has occurred." *Litchfield*, 824 N.E.2d at 361. Killebrew concedes that the officers had reasonable suspicion to stop his truck and had probable cause for a search warrant. We conclude that the degree or concern, suspicion, or knowledge that a violation had occurred was high. Next, regarding the degree of intrusion, the record reveals that Officer Carson observed a handgun in plain view and was able to see the handgun from outside the vehicle. Officer Trotter also observed a handgun in between the driver's seat and the center console and then leaned into the vehicle and observed a baggie of heroin in the center console without having to open or move anything. This degree of intrusion was not high. Finally, the extent of law enforcement needs was strong given the

circumstances leading to Officer Carson's stop of Killebrew. Under the totality of the circumstances, we conclude that the search of Killebrew's vehicle was reasonable and did not violate his rights under Article 1, Section 11 of the Indiana Constitution.

## II.

[23] The next issue is whether the evidence is sufficient to sustain Killebrew's conviction for possession of a narcotic drug as a class C felony. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[24] The offense of possession of a narcotic drug as a class C felony is governed by Ind. Code § 35-38-4-6, which provides that a person "who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses . . . a narcotic drug (pure or adulterated) classified in schedule I or II, commits possession of . . . a

narcotic drug" and that the offense is a class C felony if "the person was also in possession of a firearm (as defined in IC 35-47-1-5)."[1] Thus, to convict Killebrew of possession of a narcotic drug as a class C felony, the State needed to prove that he knowingly or intentionally possessed a narcotic drug classified in schedule I or II and was also in possession of a firearm.

[25] Killebrew acknowledges that he admitted that the guns in the truck were his, but argues that the evidence was not sufficient to prove beyond a reasonable doubt that he possessed the heroin. He asserts that although the heroin was in close proximity to him, it was not necessarily in his view.

[26] The State argues that the trial court could infer Killebrew's knowledge of the heroin because the baggie containing heroin was in plain view and close to the driver's seat. The State also contends that the incriminating character of the heroin was immediately apparent due to its yellowish color and its packaging.

[27] When the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Id.* A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a

---

[1] Subsequently amended by Pub. L. No. 158-2013, § 631 (eff. July 1, 2014); Pub. L. No. 168-2014, § 98 (eff. July 1, 2014).

possessory interest in the premises on which an officer found the item. *Id.* We allow this inference even when that possessory interest is not exclusive. *Id.*

[28] A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. *Id.* When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and nature of the item. *Id.* at 174-175. We have previously identified some possible examples, including: (1) a defendant's incriminating statements; (2) a defendant's attempt to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns. *Id.* at 175.

[29] "A defendant's 'proximity to contraband "in plain view" . . . will support an inference of intent' to maintain dominion or control." *Id.* (quoting *Lampkins v. State*, 682 N.E.2d 1268, 1276 (Ind. 1997), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997)). In addition to being in plain view, however, the contraband's incriminating character must be immediately apparent. *Id.* Whether the incriminating character of contraband was immediately apparent depends on an analysis similar to the one we use to determine the admissibility of evidence seized in a warrantless search under the plain view doctrine. *Id.* (citing in part *Minnesota v. Dickerson*, 508 U.S. 366, 374-375, 113 S. Ct. 2130

(1993) (evidence admissible if officers lawfully in position to view item, incriminating character immediately apparent, and officers had lawful right of access to item)).

[30] The record reveals that Officer Trotter observed what he believed to be a knotted baggie of heroin on top of some papers in a storage tray in the center console in Killebrew's truck. Officer Trotter did not have to open anything or move anything to see the baggie. When asked how close the handgun was to the baggie, Officer Trotter stated:

> Probably two feet. So it's basically, because I said the handgun was between the driver's seat and the center console. So basically if you drew a straight line in front of you, then you had the handgun between the seat and the console and then you had the suspected heroin just two feet in front kind of on that tray on the floor basically.

Transcript at 99.

[31] Based on the record, we conclude that evidence of probative value existed from which the trial court could find that Killebrew possessed heroin and a firearm as a class C felony. *See Ables v. State*, 848 N.E.2d 293, 296 (Ind. Ct. App. 2006) (holding that the defendant had constructive possession where she was in the vehicle in which the gun was found, was in close proximity to the gun, and admitted that the gun was in the center console with her cell phone).

[32] Lastly, we note that the sentencing order lists Count II as possession of methamphetamine. We remand to the trial court with instructions to correct the sentencing order.

## *Conclusion*

[33] For the foregoing reasons, we affirm Killebrew's conviction and remand with instructions to correct the sentencing order.

[34] Affirmed and remanded.

Crone, J., and Pyle, J., concur.