**Darnell MASTERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0503–CR–223.

Court of Appeals of Indiana.

March 21, 2006.

Transfer Denied May 11, 2006.

John Pinnow, Greenwood, for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

FRIEDLANDER, Judge.

In this interlocutory appeal, Darnell Masterson appeals the denial of his motion to suppress evidence obtained as the result of a warrantless search of his vehicle. He presents the following restated issues for review:

1. Did the warrantless search violate Masterson's rights under the Fourth Amendment to the United States Constitution?

2. Was the warrantless search reasonable under Article I, Section 11 of the Indiana Constitution?

We affirm.

After midnight on October 5, 2004, Marion County Sheriff's Deputy Michael Gilbert was dispatched to a Shell Station on the corner of 38th Street and Post Road on the report of a possible carjacking. The station attendant informed Deputy Gilbert that he called 911 after he saw a woman running and screaming that she needed the police. Within two minutes of his arrival, Deputy Gilbert was informed by dis-

patch that the victims were at 42nd Street and Post Road. He immediately proceeded to that location to speak with the victims, Bonita Shaffer and Melanie Wendell.

Shaffer explained to Deputy Gilbert that she exited Wendell's vehicle and walked toward the window of the Shell Station when a young black male approached her from behind, stuck a blunt object against her back, and told her to go to his car or he would shoot her. He then ordered her into a white four-door Ford with chrome wheels, where he put a knife to her throat and demanded money. Shaffer handed over the few dollars she had. The man threatened to kill her if she did not give him more money. He then proceeded to Wendell's vehicle and demanded money from Wendell. After a brief struggle, the man put a knife to Wendell's throat and said he would kill her if she did not hand over her purse. After taking Wendell's purse and cell phone, the man started back towards Shaffer. Shaffer quickly exited the white Ford and ran up to the attendant, yelling that she had been robbed. The assailant ran to the white Ford and drove away.

The women told Deputy Gilbert that they followed the white Ford until it turned east on 39th Place. They observed the vehicle pull into a parking area in front of an apartment building on the south side of 39th Place. After observing their assailant park the vehicle, the women continued northbound on Post Road to look for a police officer. Within minutes of the robbery, the women spoke with Deputy Gilbert at 42nd and Post Road. In addition to the details set forth above, including a description of the white Ford, the women informed Deputy Gilbert their assailant was a young black male with his Afro pulled back into a ponytail and wearing blue jeans and a blue and white striped shirt.

Deputy Gilbert broadcast the information over his police radio, and within a minute or two, another deputy located an unoccupied white 1986 Ford LTD parked near an apartment building located at 9021 East 39th Place. The hood of the vehicle was still warm to the touch, indicating it had recently been driven. The victims arrived on the scene with Deputy Gilbert and positively identified the vehicle.

Believing they had located the vehicle used in the crime, Deputy Gilbert and at least two other officers decided to remain at a discreet distance and observe the vehicle in hopes that the driver would return. A check of the vehicle's handicap license plate revealed the vehicle was registered to an older man who did not match the victims' description. The vehicle, however, had not been reported stolen. After about fifteen or twenty minutes of observing the vehicle with no activity, Deputy Gilbert contacted his supervisor, Detective Kelly Weidner. Detective Weidner advised Deputy Gilbert to "impound the vehicle with a detective's hold". *Transcript* at 11.

Prior to conducting an inventory search of the vehicle, the officers noticed a black male, later identified as Jawan Jordan, observing them. Deputy Gilbert approached Jordan and questioned him about the vehicle and its driver. Jordan advised that he had observed a black male with a long ponytail driving the vehicle and pointed to an area further east in the apartment complex where he thought the driver lived. Deputy Gilbert and another deputy then began inventorying the unlocked vehicle and discovered a pay stub on the front seat made payable to Darnell Masterson with an address of 9021 East 39th Place, Apartment # 5.

The officers went to this address, which was only about twenty yards away. Jordan answered the door of the apartment and allowed the officers to enter. When

he was again asked about the driver of the white Ford, Jordan acted nervous and motioned with his head toward a coat closet. Masterson, who fit the description given by the victims, was found hiding in the closet. The officers also found several items inside the apartment belonging to Wendell, including her purse, a cell phone, and a check drawn on her bank account. Thereafter, the victims were brought to the scene and identified Masterson as their assailant. Jordan advised the officers that Masterson had admitted committing the robbery and had offered him the cell phone taken in the crime.

The State subsequently charged Masterson with two counts of robbery, a class B felony, two counts of intimidation, a class C felony, and one count of confinement, a class B felony. Thereafter, on January 18, 2005, Masterson filed a motion to suppress evidence obtained as a result of the warrantless search of the vehicle. Following an evidentiary hearing, the trial court denied the motion to suppress concluding that the automobile exception applied under the Fourth Amendment and the search was reasonable under article I, section 11 of the Indiana Constitution. Masterson appeals the denial of his motion to suppress.

■■ Our review of a trial court's denial of a motion to suppress is similar to other sufficiency matters. *Clark v. State*, 808 N.E.2d 1183 (Ind.2004). That is, the record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* Further, we do not reweigh the evidence and we consider con-

flicting evidence most favorably to the trial court's ruling. *Id.*

1.

■ With regard to the Fourth Amendment, Masterson claims the trial court erroneously determined that the search fell within the automobile exception to the warrant requirement.[1] In particular, Masterson asserts the officers did not have probable cause to search the vehicle and the vehicle was not readily mobile.

■ As a general rule, the Fourth Amendment prohibits warrantless searches. *Myers v. State*, 839 N.E.2d 1146 (Ind.2005). The automobile exception, however, is a well-recognized exception to the warrant requirement. *See id.* A search falls within this exception when the vehicle is readily mobile and probable cause exists to believe it contains contraband or evidence of a crime. *See id.* (citing *Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (where there is probable cause to search a vehicle a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained)); *see also Gibson v. State*, 733 N.E.2d 945 (Ind.Ct.App.2000).

■ We turn first to the probable cause requirement. "Facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate." *Gibson v. State*, 733 N.E.2d at 952. "Probable cause to issue a search warrant exists where the

---

1. We note that standing is not an issue on appeal, as the State conceded below that Masterson had established standing. In particular, evidence was admitted that William Cleaver, the man to whom the car was registered, had sold the subject vehicle to Masterson for $700 in the weeks prior to the rob-

bery. Although the license plate had not been changed and Masterson had not registered the car, Cleaver testified at the suppression hearing that he had relinquished possession and ownership of the car to Masterson prior to the date in question.

facts and circumstances would lead a reasonably prudent person to conclude that a search of those premises will uncover evidence of a crime." *Id.*

Masterson appears to argue that at the time of the search the officers could not have reasonably concluded his vehicle was the one used in the robbery. Masterson's slender argument goes:

> The victims' description of a young black male as the robber did not fit with a car with a handicapped plate registered to an older black male at a different address. Moreover, Deputy Gilbert did not see a knife, purse or other items inside the car which would be consistent with it having been used in a robbery.

*Appellant's Brief* at 12 (citations to record omitted). This argument ignores the following facts relied upon by the trial court in determining that probable cause existed:

> In this case the Court heard evidence that the victims of an armed robbery followed the subject vehicle and positively identified the car to police as the same one used by the [assailant] to flee the scene of the crime. A review of State's Exhibit 2 shows that the time between the 911 dispatch and the discovery of the white LTD at the apartment complex to be less than ten minutes. Deputy Gilbert testified that he felt the car hood and confirmed that the automobile had recently been driven. Ms. Wendell and Ms. Shaffer also gave a description of their attacker as a young black male with a ponytail. This is the same description given by [Jordan] who confirmed that such an individual was known to him as the regular driver of the vehicle in question, and was also known to be living in a nearby apartment building.

*Appendix* at 91–92. We agree with the trial court that based on this information, the officers could have reasonably concluded that the subject vehicle was the same one recently used by the suspect to flee the scene of the armed robbery. In our estimation, this was the only reasonable conclusion under the circumstances. Thus, based on the facts known to the officers at the time of the search, they had probable cause to believe a search of the vehicle would uncover contraband or evidence of the crime.

■ Masterson also argues that the vehicle was not readily mobile. He contends: 1) no one attempted to enter the vehicle during the fifteen or twenty minutes the officers were observing it; 2) there was a sufficient number of officers at the scene for one of them to obtain a warrant while the other remained with the vehicle; and, 3) if a prospective driver appeared, the officers could have detained the person for a reasonable period of time while the warrant was diligently being sought.

Our Supreme Court has recently addressed the inherent ambiguity in the phrase "readily mobile," noting numerous inconsistent interpretations in our court as well as between other jurisdictions. *See Myers v. State,* 839 N.E.2d at 1151 ("[d]ecisions of the Indiana Court of Appeals are not consistent regarding whether automobiles under police observation or control are readily mobile"). The Court then proceeded to clarify the meaning of "readily mobile" as follows:

> In light of the Supreme Court's recent emphatic statement in *Dyson* that the automobile exception "does not have a separate exigency requirement," [527 U.S. at 467, 119 S.Ct. 2013], we conclude that this exception to the warrant requirement under the Fourth Amendment does not require any additional consideration of the likelihood, under the circumstances, of a vehicle being driven away. Rather, *we understand the "ready mobility" requirement of the*

*automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile,* and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present. This broad understanding of "readily mobile" is also consistent with the recognition that, for Fourth Amendment purposes, an individual is deemed to have a reduced expectation of privacy in an automobile.

*Myers v. State,* 839 N.E.2d at 1152 (emphasis added).

In the instant case, Masterson's vehicle was clearly operational. The victims had observed Masterson drive the vehicle from the location of the robbery to the parking lot, and its engine was still warm when the officers located the parked vehicle only minutes after the robbery. As directed by our Supreme Court, we reject Masterson's request for us to go further and consider the likelihood, under the circumstances, of the vehicle being driven away while police obtained a search warrant. Masterson's vehicle was operational and, therefore, readily mobile. *See Myers v. State,* 839 N.E.2d 1146.

Because the officers had probable cause to search the readily mobile vehicle, the warrantless search of it was justified under the automobile exception. Accordingly, the trial court properly found no violation of the Fourth Amendment.

### 2.

 Masterson separately claims that the warrantless search of his vehicle violated his rights under article I, section 11 of the Indiana Constitution. In particular, he contends the search was unreasonable because, under the circumstances, a warrant could have been obtained, there was little likelihood the vehicle would have been removed from the residential parking lot while observed by police, and there was no immediate necessity to search in order to protect the police or community.

 "While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application." *Myers v. State,* 839 N.E.2d at 1153. To determine whether a search violated the Indiana Constitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances. *Myers v. State,* 839 N.E.2d 1146. This requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search. *Id.* Our Supreme Court has summarized the evaluation as follows:

[A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005). "Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable." *State v. Bulington,* 802 N.E.2d 435, 438 (Ind.2004).

Masterson directs us to *Brown v. State,* 653 N.E.2d 77 (Ind.1995), the facts of which bear several similarities to the present case. In *Brown,* police performed a warrantless search of an unoccupied vehicle found parked in a residential neighborhood and surrounded by police cars. The

vehicle matched the description of one used during a robbery the previous day. The search occurred in the afternoon, more than twenty-four hours after the robbery. In determining that the search was not reasonable, the Court noted "little likelihood that the car would be moved", "neither a shortage of time nor an emergency" existed, and "police were not engaged in a community caretaking function." *Id.* at 80. While recognizing that exigent circumstances could make a warrantless search of a vehicle reasonable, the Court concluded that no exigencies existed in the case. *Brown v. State*, 653 N.E.2d 77.

Although there are many apparent similarities between *Brown* and the instant case, we find significant distinctions relating to the exigencies of the situation. Unlike in *Brown*, the searched vehicle here was unquestionably the one involved in the robbery. More importantly, in this case, the officers were actively investigating a late-night armed robbery of two victims that had just occurred. The victims had been in hot pursuit of their assailant as he fled the scene, and they assisted police in locating the suspect's vehicle within minutes of the crime. The suspect did not return to the unlocked vehicle in the short time it was being observed by officers. During this time, the officers discovered that the vehicle used in the robbery was not registered to the suspect, but rather to an older handicapped man. In sum, police had an armed robber at large, who had threatened to kill his last two victims over an insignificant amount of money, and law enforcement's only physical link to him at the time was the vehicle he had used minutes before in the robbery. To say that no exigent circumstances existed overlooks

the need to quickly identify, find, and apprehend the potentially armed and dangerous suspect before he fled from the area and/or struck again.

Considering and balancing the non-exclusive factors identified in *Litchfield*, we conclude that the interior search of Masterson's vehicle was reasonable under the totality of the circumstances. First, there was a significant "degree of concern, suspicion, or knowledge" that a serious crime had just occurred and this vehicle had been involved. *Litchfield v. State*, 824 N.E.2d at 361; *see also Myers v. State*, 839 N.E.2d 1146. Second, while the search of Masterson's vehicle was likely to impose an intrusion "on the citizen's ordinary activities," *Litchfield v. State*, 824 N.E.2d at 361, "we recognize that, to a limited extent, the intrusion, at least as to public notice and embarrassment, was somewhat lessened because of the hour and place of the search." *Myers v. State*, 839 N.E.2d at 1154 (search occurred after midnight and in driveway of defendant's mobile home). We further note that at the time, it was not even clear to police that Masterson owned the vehicle subject to the search, as it was registered to another individual. Third, "the extent of law enforcement needs", *Litchfield v. State*, 824 N.E.2d at 361, requires consideration of the nature and immediacy of the governmental concern. As set forth above, the officers were pursuing a potentially armed and dangerous suspect who had just fled after robbing two women at knifepoint. Rather than taking the time to prepare a search warrant application, even assuming a warrant could have been obtained within the short period of time officers were observing the vehicle,[2] we find that under the

---

2. The State conceded below that a search warrant could have been obtained during the fifteen to twenty minutes the officers were observing the vehicle from a distance in hopes the suspect would return. We share in the

trial court's observation that it is "rather optimistic of the parties to believe that a search warrant application, including the requisite affidavit and warrant, can be fully prepared and submitted to a Court around the midnight

circumstances it was reasonable for police to concentrate their efforts on safeguarding the community by quickly and efficiently pursuing the suspect. Therefore, we find no violation of article I, section 11 of the Indiana Constitution.

Judgment affirmed.

CRONE, J., and MAY, J., concur.

hour in such an expedient fashion." *Appendix* at 93; *see also Myers v. State*, 839 N.E.2d at 1154 (noting that the search in *Brown* was done in mid-day, "whereas the present search occurred after midnight, making prompt access to a magistrate more difficult").