**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HOWARD MOFFITT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1304-CR-186 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause Nos. 49G04-1203-FB-18417, 49G04-1102-FD-11750

**November 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Howard Moffitt appeals his convictions for burglary as a class B felony, theft as a class D felony, and operating never having received a license as a class C misdemeanor. Moffitt raises one issue, which we revise and restate as whether the trial court abused its discretion by admitting evidence obtained during a search of a vehicle. We affirm.

FACTS AND PROCEDURAL HISTORY

On March 19, 2012, at about 7:30 in the morning, Marcy Gordy was in her garage and about to leave for work when she heard the sound of glass breaking. She observed a man exit the home of her neighbor, Terri Cummings, through a broken sliding glass door while holding a large television and walk across the yard. The man walked to a car, a gold or tan older four-door vehicle parked next to Gordy's driveway, opened the trunk, and placed the television inside. The man then sat down in the driver's seat of the car and stayed there for a few minutes. Gordy called 911 from her cell phone and told the 911 operator her neighbor's address. The car drove away while she was making the 911 call, and Gordy told the operator that the car was proceeding north. Gordy also described the man to the 911 operator as a young black male.

Sergeant Larry Jones of the City of Lawrence Police Department received a dispatch of a burglary in progress, specifically that "a tan four-door car last seen northbound on Louden Drive and driven by a young black male who stole a TV out of the residence," and he arrived in the neighborhood about two minutes after the 911 call. Transcript at 155. Sergeant Jones was familiar with the layout of the sub-division and Louden Lane, and he knew that since "the vehicle had went north, rather than south . . . it was locked in the neighborhood up there. There is no exit out from up there . . . . unless

2

you backtrack." Id. at 153. As he approached the intersection of Long Lake and High Timber, he observed a tan colored Malibu being driven by a young, black male, and, as the car turned on to High Timber, Officer Jones activated his vehicle's emergency lights. The car pulled over, and the driver exited the vehicle. After Sergeant Jones ordered the man back into the car he obtained the man's identification and ran the information through dispatch. The man was identified as Howard Moffitt. Dispatch then informed Sergeant Jones that Moffitt had never received a driver's license. The license plate came back registered to Angela Mitchell, who is Moffitt's mother. At that time, Sergeant Jones decided to arrest Moffitt for operating while never having received a license and to impound the car.

Another officer, Officer Jeremy Kurth, came upon the scene after receiving the dispatch of "a four-door car going northbound on Louden Drive, young black male, television taken out of a residence," and he observed Sergeant Jones and a car consistent with the dispatch. Id. at 176. Officer Kurth performed a search pursuant to impounding the vehicle and observed work gloves and what he thought was a screwdriver which turned out to be a nail pull. Id. He recovered the keys from the driver's side and tried to open the trunk, but it would not open, and when asked how to open the trunk, Moffitt told Officer Kurth that the trunk would not open. Officer Kurth pulled back the corner of the back passenger seat to access the trunk and shone his flashlight in the trunk, and he observed a television. Officer Kurth then found a trunk release button on the passenger side of the vehicle and gained access to the trunk. The television was identified as the one removed from Cummings's house. Exhibits at 20.

3

On March 20, 2012, the State charged Moffitt with Count I, burglary as a class B felony; Count II, theft as a class D felony; and Count III, operating while never having received a license as a class C misdemeanor. On July 3, 2012, Moffitt filed a motion to suppress evidence on the grounds that the evidence of the television in the vehicle's trunk was seized pursuant to an illegal search and seizure. On November 21, 2012, the court denied Moffitt's motion to suppress. On February 14, 2013, the court held a bench trial in which evidence consistent with the foregoing was presented, and the court found Moffitt guilty as charged. On March 22, 2013, the court held a sentencing hearing and sentenced Moffitt to ten years with four years suspended including two years of probation on Count I, 545 days on Count II, and 60 days on Count III, to be served concurrently.

## ISSUE / STANDARD OF REVIEW

The issue is whether the trial court abused its discretion by admitting evidence obtained during a search of a vehicle. Although Moffitt originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. See Jefferson v. State, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), trans. denied; Lundquist v. State, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if

4

the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied. Also, we may affirm a trial court's decision to admit evidence seized as a result of the search based on any legal theory supported by the record. Edwards v. State, 724 N.E.2d 616 (Ind. Ct. App. 2000), trans. denied.

DISCUSSION

Moffitt argues that the search was illegal under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution.

We begin by addressing Moffitt's Fourth Amendment claims. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Thus, the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government. Patterson v. State, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). "Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" Holder v. State, 847 N.E.2d 930, 935 (Ind. 2006) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). A search without a warrant requires the State to prove an exception to the warrant requirement applicable at the time of the search. Id.

5

Moffitt challenges the admission of the television into evidence on the basis that the search did not pass muster under the inventory search exception, which is the justification the State sought in order to admit the evidence. As noted above, however, we may affirm a court's decision to admit evidence on any legal theory supported by the record, and here we elect to address the search under the automobile exception to the Fourth Amendment's warrant requirement.

A search falls within the automobile exception when a vehicle is readily mobile and there is probable cause to believe it contains contraband or evidence of a crime. Meister v. State, 933 N.E.2d 875, 878-879 (Ind. 2010) (citing Maryland v. Dyson, 527 U.S. 465, 467, 119 S. Ct. 2013 (1999)). Where there is probable cause to search a vehicle, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been obtained. Id. The automobile exception is based on the inherent mobility and reduced expectation of privacy of an automobile. Masterson v. State, 843 N.E.2d 1001, 1004 (Ind. Ct. App. 2006), trans. denied; see also Myers v. State, 839 N.E.2d 1146, 1152 (Ind. 2005). The United States Supreme Court has specifically stated that when there is probable cause that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment. Meister, 933 N.E.2d at 879 (citing California v. Acevedo, 500 U.S. 565, 569, 111 S. Ct. 1982 (1991)); see also Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S. Ct. 2485 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.") (citing California v. Carney, 471 U.S. 386, 393, 105 S. Ct. 2066 (1985)). Also,

6

"when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." Cheatham v. State, 819 N.E.2d 71, 75 (Ind. Ct. App. 2004) (quoting Michigan v. Thomas, 458 U.S. 259, 261, 102 S. Ct. 3079, 3080 (1982)).

Also, "[f]acts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate." Meister, 933 N.E.2d at 879 (quoting Masterson, 843 N.E.2d at 1004). Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime. Esquerdo v. State, 640 N.E.2d 1023, 1029 (Ind. 1994).

Here, Sergeant Jones received a dispatch of "a tan four-door car last seen northbound on Louden Drive [sic] and driven by a young black male who stole a TV out of the residence," and he arrived in the neighborhood about two minutes thereafter. Transcript at 155. Sergeant Jones was familiar with the layout of the sub-division and Louden Lane, and he knew that since "the vehicle had went north, rather than south . . . it was locked in the neighborhood up there. There is no exit out from up there . . . . unless you backtrack." Id. at 153. As he approached the intersection of Long Lake and High Timber, which is an intersection in the sub-division north of Louden Lane and in which the only exit to the sub-division was to backtrack and head south and pass Louden Lane, State's Exhibit 1, Sergeant Jones observed a tan colored Malibu being driven by a young,

7

black male, and he initiated a stop of the vehicle. Under the circumstances, notably the proximity in time between the 911 phone call and Sergeant Jones's encounter with Moffitt, the fact that Moffitt, who was a young black male, and the car matched the description provided by Gordy, the neighbor of Cummings, and that Sergeant Jones knew that Moffitt could not have exited the sub-division when he proceeded north from Louden Lane, we conclude that probable cause existed for a reasonably prudent person to believe that a search of the vehicle, and specifically the trunk, would uncover evidence of a crime. See Johnson v. State, 766 N.E.2d 426, 431-433 (Ind. Ct. App. 2002) (holding that the police had probable cause to search under the hood of a vehicle where police responded to a report of shots fired and an officer was informed by witnesses of a description of one of the shooters, the vehicle, and that a handgun had been stashed under the hood of the car, and police subsequently stopped a vehicle and driver matching the description given by the witnesses), trans. denied.

Moffitt also argues that the search of the vehicle violated Article 1, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution." Trimble v. State, 842 N.E.2d 798, 803, adhered to on reh'g, 848 N.E.2d 278 (Ind. 2006). "Instead of focusing

8

on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." Id. "We will consider the following factors in assessing reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" Id. (quoting Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005)).

We begin by considering "the degree of concern, suspicion, or knowledge that a violation has occurred." Litchfield, 824 N.E.2d at 361. As noted above, Sergeant Jones had just minutes before been dispatched to the sub-division concerning a burglary and received a description of the perpetrator and the car he had been driving, as well as the direction in which the perpetrator had fled. The stop took place in the same sub-division. We conclude that the degree or concern, suspicion, or knowledge that a violation had occurred is high. Next, regarding the degree of intrusion, Moffitt does not challenge in his brief the validity of the stop, and he concedes that the officers correctly determined that he was driving after having never received a driver's license. Upon stopping Moffitt, the officers suspected him to be the person they were dispatched to apprehend based on the description given by Gordy. Also in order to access the trunk, although Officer Kurth initially pulled back the corner of the back passenger seat and shone his flashlight in the trunk and observed a television, he ultimately gained access to the trunk using a trunk release button found on the passenger side of the vehicle. Under these circumstances,

9

this degree of intrusion was not high. Finally, the extent of law enforcement needs was strong given the circumstances leading to Sergeant Jones's stop of Moffitt.

Under the totality of the circumstances, we conclude that the search of Moffitt's vehicle was reasonable and did not violate his rights under Article 1, Section 11 of the Indiana Constitution.

## CONCLUSION

For the foregoing reasons, we affirm Moffitt's convictions for burglary, theft, and operating while never having received a license.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.