David, J.,
concurring in part, dissenting in part.
I agree with the majority that there is no Fourth Amendment violation and that the detective gave proper skilled-witness testimony. I further agree that Zanders’ Article 1, Section 11 argument is not waived for appellate review. However, I write separately because I disagree with the majority’s Article 1, Section 11 analysis. I would find that Zanders’ Article 1, Section 11 rights were violated.
As the majority observes, under Section 11, the State bears the burden of showing that police conduct was reasonable under the totality of circumstances. In assessing whether the State met this burden, we balance: “1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on a citizen’s ordinary activities, and 3) the extent of law enforcement needs.” Litchfield, 824 N.E.2d at 361. I agree with the majority that the level of suspicion was high, but I disagree that the level of intrusion here was low and that law enforcement needs were so high that police needed to obtain the historical CSLI without a warrant.
The majority cities McCowan v. State, 10 N.E.3d 522 (Ind. Ct. App. 2014) summarily aff'd in relevant part by McCowan v. State, 27 N.E.3d 760, 768 (Ind. 2015), for the proposition that the level of intrusion was low. In McCowan, the Court of Appeals found that the level of intrusion was low because police obtained the CSLI from a third-party provider, not defendant, and the information collected was part of the normal course of business. Id. at 534. This is essentially the federal approach which relies upon third-party doctrine. As the majority aptly notes, this doctrine “plays no part in our State’s search-and-seizure jurisprudence.” (Op. at 186.) Indeed, with regard to search and seizure, our constitution generally provides more protection *190 than our federal counterpart. See Shotts v. State, 925 N.E.2d 719, 726 (Ind. 2010) (“The Indiana provision in some cases confers greater protections to individual rights than the Fourth Amendment affords”); Holder v. State, 847 N.E.2d 930, 940 (Ind. 2006) (Article 1, Section 11 is given “a liberal construction to angle in favor of protection for individuals from unreasonable intrusions on privacy,”) I do not believe that most Hoosiers who use cell phones understand and appreciate that, by contracting with a third-party cell phone provider, they are giving up information that may be turned over to police in an effort to locate them without the requirement of a search warrant.
I appreciate that the majority acknowledges that had police obtained more sophisticated cell phone records, the level of intrusion would be “higher,” but I feel that even given the limited CSLI requested here, the intrusion is high because it allows police to track the movements of private citizens who are using their phones, likely unbeknownst to them.
I am also troubled with the majority’s conclusion that law enforcement needs here were so high that the police could not obtain a warrant. As the majority observes, this is not the case where there is a missing person or obvious exigency. Instead, we have an armed robber who has fled the State. Police had at least some information about Zanders and where he may be living. I wonder why instead of completing and faxing a request to obtain the phone records, police did not do the legwork necessary to secure a warrant. In today’s world, search warrants can be requested and, where warranted, obtained within minutes, not hours or days.
The majority cites Masterson v. State, 843 N.E.2d 1001 (Ind. Ct. App. 2006) in support of its finding that law enforcement needs were high in a situation involving a “potentially armed and dangerous” robbery suspect. (Op. at 187.) But Masterson involved circumstances not present here. In Masterson, police were pursuing a suspect who had “just fled after robbing two women at knifepoint.” Masterson v. State, 843 N.E.2d at 1007 (emphasis added). Here, police were looking for Zanders the day after his second robbery. Also, the Masterson court noted in a footnote that it doubted that police could have speedily gotten a warrant in that case because it was around the midnight hour. Id. at 1007-1008, n. 2. Here, police submitted the records request to the phone company at 1:57 p.m. (and again, the day after the robbery). Thus, I see no reason that police could not have sought and obtained a warrant in this case.
In sum, I believe that while here the suspicion may have been high, the intrusion was also high and the extent of law enforcement needs was low, given that police could have and should have obtained a warrant. Accordingly, I would find that the search violated Zanders’ Article 1, Section 11 rights.