## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 25 2020, 8:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Carrillo Law LLC
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Nashid Muhammad,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

August 25, 2020

Court of Appeals Case No.
19A-CR-2397

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1087-F4-28

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Nashid Muhammad was found guilty of, among other crimes, domestic battery, a Class A misdemeanor; possession of marijuana, a Class B misdemeanor; and unlawful possession of a firearm by a serious violent felon, a Level 4 felony. The trial court sentenced Muhammad to an aggregate sentence of eleven and one-half years with two and one-half years suspended to probation. Muhammad appeals, raising the following issues for our review: (1) whether the trial court abused its discretion by admitting certain evidence allegedly obtained in violation of Muhammad's rights under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution, (2) whether the State presented sufficient evidence to support the above convictions, and (3) whether Muhammad's sentence is inappropriate in light of the nature of his offenses and his character. We conclude that Muhammad's rights were not violated under either constitutional provision and therefore, the trial court did not abuse its discretion in admitting evidence obtained from a valid search. We also conclude the State presented sufficient evidence to support the challenged convictions and Muhammad's sentence is not inappropriate. We therefore affirm his convictions and sentence.

# Facts and Procedural History[1]

Muhammad and Deidra Trail were involved in a relationship and had lived together for approximately one year. On July 8, 2018, Muhammad threw a Bluetooth speaker at Trail during an argument, striking her in the forehead. As a result, Trail sustained an injury to her forehead that lasted "[p]robably a week and a half." Transcript, Volume II at 72. Following the incident, Muhammad left the residence in Trail's car, a red Hyundai.

In the early morning hours of July 9, Officer Evan McCain of the Lafayette Police Department ("LPD") was dispatched to an automobile accident involving a rolled over white Cadillac. When Officer McCain arrived on the scene, other officers were present, but the driver of the Cadillac had fled. Officer McCain ran the vehicle's license plate through the Bureau of Motor Vehicles ("BMV") database and discovered Paris Hill was the registered owner of the vehicle. Officer McCain familiarized himself with a BMV photograph of Hill and began checking the area to locate him.

Officer McCain had traveled approximately four blocks away from the accident scene when he drove by a red Hyundai and noticed an individual matching Hill's description riding in the backseat. Officer McCain advised dispatch that

---

[1] The facts in this case are comprised of testimony from the trial held on August 6, 2019, as well as evidence from the suppression hearing held on May 17 that is not in direct conflict with evidence introduced at the trial. *See Kelley v. State*, 825 N.E.2d 420, 426 (Ind. Ct. App. 2005).

he had located Hill and followed the vehicle until another officer was in the area.

[5] After the driver of the Hyundai failed to signal two hundred feet prior to a turn, Officer McCain initiated a traffic stop. LPD Officer Israel Salazar arrived on the scene and the two officers approached the vehicle. Four people were in the vehicle: Hill and his girlfriend were sitting in the back seats; another woman, Amanda, was in the driver's seat; and Muhammad was sitting in the front passenger seat. The officers immediately identified the "[p]lain smell of burnt marijuana" emanating from the passenger compartment of the vehicle. *Id.* at 101. Officer Salazar also noticed that Hill had "cuts and scrapes" that were consistent with an accident. *Id.* at 35. The officers then removed Hill and his girlfriend from the vehicle and placed them in handcuffs "for the hit and run investigation and then waited on other units to get there to assist with what had now . . . become a narcotics investigation[.]" *Id.* at 23. Muhammad and Amanda remained inside the vehicle.

[6] After additional officers arrived, Officers McCain and Salazar re-approached the vehicle and this time, they noticed a pipe in the center console of the vehicle that had burnt marijuana residue in the bowl. *Id.* at 30. Muhammad and Amanda were removed from the vehicle, handcuffed, and placed in separate police cars. Based on the odor of marijuana and the presence of the pipe, officers conducted a search of the vehicle. One officer bumped into the glove compartment and a loaded .22 caliber handgun fell from the glove compartment to the front passenger floorboard. In the trunk, officers located a

second loaded .22 caliber handgun, a shotgun, ammunition, and a jar containing a plant-like material that field tested positive for marijuana.

[7] At some point, Trail arrived on the scene to pick up her vehicle. While talking with Trail, Officer McCain observed a discolored lump on her forehead, and she told him how she sustained the injury. Officer McCain asked Trail if she owned any firearms or knew where the firearms in the vehicle came from; Trail indicated that she did not own any firearms.

[8] The State charged Muhammad with Count I, unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count II, carrying a handgun without a license, a Level 5 felony; Count III, domestic battery, a Class A misdemeanor; Count IV, carrying a handgun without a license, a Class A misdemeanor; Count V, possession of marijuana, a Class B misdemeanor; and Count VI, invasion of privacy, a Class A misdemeanor.

[9] The trial court held a pre-trial hearing on a motion to suppress evidence filed by Muhammad and denied his motion. At trial, over Muhammad's objection, the trial court admitted into evidence pictures of the firearms and marijuana found inside the red Hyundai. The jury subsequently found Muhammad guilty of Counts III through VI and, in the second phase of trial, the trial court found Muhammad guilty of Counts I and II.[2] The trial court sentenced Muhammad to

---

[2] Due to double jeopardy concerns, the trial court dismissed Counts II and IV and entered judgment of conviction on the remaining counts. *See* Appealed Order at 2.

an aggregate sentence of eleven and one-half years with two and one-half years suspended to probation. Muhammad now appeals.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

Muhammad argues the trial court erred in denying his motion to suppress; however, because he brings this appeal following his trial, rather than as an interlocutory appeal of the denial of his motion to suppress, we review this appeal as a challenge to the trial court's admission of evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Young v. State*, 980 N.E.2d 412, 417 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or when the court has misinterpreted the law. *Id*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the verdict. *Patterson v. State*, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). We also consider uncontested evidence favorable to the defendant. *Id*. The constitutionality of a search is a question of law, which we review de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013). Similarly, determinations of reasonable suspicion and probable cause are reviewed de novo. *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005).

# B. The Fourth Amendment

Muhammad first argues that the trial court abused its discretion in admitting photos of the evidence found during the search because it was obtained in violation of his rights under the Fourth Amendment to the United States Constitution, which guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This protection has been extended to the States through the Fourteenth Amendment. *Sanders v. State*, 989 N.E.2d 332, 335 (Ind. 2013). To deter state actors from violating the prohibition against unreasonable searches and seizures, evidence obtained in violation of the Fourth Amendment is generally inadmissible in a prosecution of the person whose rights were violated. *Clark*, 994 N.E.2d at 260; *see also Segura v. United States*, 468 U.S. 796, 804 (1984) (noting the exclusionary rule encompasses both "primary evidence obtained as a direct result of an illegal search or seizure" and any "evidence later discovered and found to be a derivative of an illegality"). Under the Fourth Amendment, warrantless searches and seizures are per se unreasonable, subject to a "few specifically established and well-delineated exceptions." *Katz v. Unites States*, 389 U.S. 347, 357 (1967) (footnote omitted). When a defendant challenges a

warrantless search, it is the State's obligation to prove the search fell within an exception to the warrant requirement. *Clark*, 994 N.E.2d at 260.

[12] "One exception to the warrant requirement is the search incident to arrest, which permits 'a search of the arrestee's person and the area within his or her control.'" *Durstock v. State*, 113 N.E.3d 1272, 1278 (Ind. Ct. App. 2018) (quoting *Clark*, 994 N.E.2d at 261 n.10), *trans. denied*. An officer may conduct a search incident to a lawful arrest if the officer has probable cause to make an arrest. *Curry v. State*, 90 N.E.3d 677, 687 (Ind. Ct. App. 2017), *trans. denied*. Probable cause exists "when the totality of the circumstances establishes 'a fair probability'—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime[.]" *Hodges v. State*, 125 N.E.3d 578, 582 (Ind. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination of probable cause is "to be based on the factual and practical considerations of everyday life upon which reasonable and prudent persons act." *State v. Hawkins*, 766 N.E.2d 749, 751 (Ind. Ct. App. 2002), *trans. denied*.

[13] Muhammad argues that the evidence obtained from the search of the vehicle should have been excluded because there was no probable cause for his arrest. *See* Appellant's Brief at 13. We disagree. At the suppression hearing and at trial, Officers McCain and Salazar testified that when they approached the vehicle, they smelled a strong odor emanating from inside the vehicle. Both officers further testified that, based on their training and experience, they knew the odor to be burnt marijuana. This evidence is sufficient to support a finding of probable cause to search the vehicle. *See Hawkins*, 766 N.E.2d at 752 (stating

that "when a trained and experienced police officer detects the strong and distinctive odor of burnt marijuana coming from a vehicle, the officer has probable cause to search the vehicle"). After removing Hill and his girlfriend from the vehicle, officers returned to the vehicle and observed a pipe in the center console containing burnt marijuana residue. Officer McCain testified that the pipe was in plain view and in close proximity to Muhammad. At the time, Muhammad was still an occupant of the vehicle seated in the front passenger seat making it probable that he had control over the pipe. These facts and circumstances would have warranted a reasonable person to believe there was a fair probability that Muhammad had committed a criminal act, that is, possession of marijuana, and thus, provided probable cause for his lawful arrest.

[14] Having determined Muhammad's arrest was lawful, we now turn to the issue of whether the search incident to the arrest was proper. Muhammad contends the search of the vehicle was improper under the search incident to arrest exception because "it was unreasonable to believe that [he] (or the other occupants) would access the vehicle when they were already detained, placed in handcuffs, and put in separate squad cars." Appellant's Br. at 18.

[15] The search incident to arrest exception to the warrant requirement was first articulated in the seminal case *Chimel v. California*, in which the United States Supreme Court held a search incident to arrest is justified only "for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. 752, 763 (1969). Years later, the

Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981) (footnotes omitted). Then in *Arizona v. Gant*, the Court held that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." 556 U.S. 332, 335 (2009).

[16] In *Gant*, the defendant was arrested for driving with a suspended license, handcuffed, and secured in the back of a police car. Police officers then searched his car and found drugs in the pocket of a jacket located on the backseat. The State justified the warrantless search as a search incident to arrest. The Court rejected that justification and noted that the search incident to arrest exception "derives from interests in officer safety and evidence preservation[.]" *Id.* at 338. The Court clarified that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351 (emphasis added). Applying that principle, the Court concluded that the search of the defendant's car was unreasonable because "police could not reasonably have believed either that [the defendant] could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein[.]" *Id.* at 344.

[17] Muhammad contends that *Gant* does not apply because he was secured away from the vehicle and "it was unreasonable to believe that [he] might access the vehicle" at the time of the search. Appellant's Br. at 19. Although Muhammad is somewhat correct in that *Gant* does say the police may search a vehicle incident to arrest if the arrestee is within reaching distance of the vehicle, he fails to acknowledge the second justification for a search incident to arrest identified in *Gant* – police may also search a vehicle if "it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351. The circumstances here are different than the circumstances in *Gant;* that is, the defendant in *Gant* was arrested for driving with a suspended license. The Court noted that the police could not have reasonably found evidence of that offense in the vehicle. Here, Muhammad was arrested for possession of marijuana after officers smelled the odor of marijuana coming from the passenger compartment and saw the pipe containing marijuana in the center console. Given this evidence, it was reasonable for the officers to believe they would find additional evidence in the vehicle of the offense for which Muhammad was arrested and therefore, the search of the vehicle incident to arrest did not violate his Fourth Amendment rights.[3]

---

[3] The State also argues that the warrantless search was justified by the automobile exception to the Fourth Amendment to the United States Constitution. Because we have concluded that the search was valid as incident to the arrest, we need not address the State's alternative argument.

# C. Article 1, Section 11

[18] Muhammad next argues that the search of the vehicle violated his rights under the Indiana Constitution because the officers "did not act reasonably." Appellant's Br. at 21. Article 1, section 11 of the Indiana Constitution guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularity describing the place to be searched, and the person or thing to be seized.

[19] Although Article 1, section 11 is virtually identical to the Fourth Amendment textually, Indiana courts interpret the state constitutional provision differently from the federal provision: "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). We consider the following three factors in determining the reasonableness of a warrantless search: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id*. at 361. It is the State's burden to demonstrate the reasonableness of the intrusion. *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002).

[20] Beginning with the first factor in *Litchfield*, Muhammad notes law enforcement's initial concern was the automobile accident investigation and contends that once officers located Hill, their degree of concern was low. *See* Appellant's Br. at 22. We, however, conclude that the degree of suspicion was high. Muhammad fails to acknowledge that when officers approached the Hyundai to conduct their investigation of the accident, both officers identified the strong odor of burnt marijuana coming from inside the vehicle. After the officers removed Hill and his girlfriend from the vehicle and secured them elsewhere, they returned and noticed a pipe in the center console, next to Muhammad, that contained burnt marijuana. This evidence, taken together with the reasonable inferences arising from such evidence, gave Officers McCain and Salazar a great deal of suspicion that a crime had been committed. Thus, this factor weighs in favor of the State.

[21] Second, the degree of intrusion was low. The degree of intrusion is assessed from the defendant's point of view. *Mundy v. State*, 21 N.E.3d 114, 118 (Ind. Ct. App. 2014). Here, Muhammad was already detained when the officers searched the vehicle, which belonged to his girlfriend and in which he had no ownership interest. *See Masterson v. State*, 843 N.E.2d 1001, 1007 (Ind. Ct. App. 2006) (considering, in evaluating the second *Litchfield* factor, that it was unclear to the police that the defendant owned the vehicle because it was registered to another individual), *trans. denied*. Furthermore, the interior search of the vehicle occurred after midnight. *See Myers v. State*, 839 N.E.2d 1146, 1154 (Ind. 2005) (noting that, with respect to the second *Litchfield* factor, "the intrusion, at least

as to public notice and embarrassment, [can be] somewhat lessened because of the hour and place of the search"). Under these circumstances, the search was unlikely to impose a significant intrusion on Muhammad's ordinary activities. Because the degree of intrusion was low, this factor also weighs in favor of the State.

[22] Finally, when determining the extent of law enforcement needs, we consider the nature and immediacy of the governmental concern. *Masterson*, 843 N.E.2d at 1007. Here, we conclude the extent of law enforcement needs was high because the officers had probable cause to believe one of the occupants had been involved in a hit and run. In addition, the officers identified the smell of burnt marijuana – leading them to believe the occupants were in possession of or concealing illegal drugs. The articulated needs of law enforcement were heightened and therefore, this factor also weighs in favor of the State. Under the totality of the circumstances, we conclude that the search of the vehicle was reasonable and did not violate Muhammad's rights under Article 1, section 11 of the Indiana Constitution.

[23] In sum, because Muhammad's rights under the federal and state constitutions were not violated, the trial court did not abuse its discretion in admitting pictures of the evidence seized from the vehicle.

# II. Sufficiency of the Evidence

## A. Standard of Review

[24] Muhammad challenges the sufficiency of the evidence of his possession of a firearm, marijuana, and battery convictions. When reviewing the sufficiency of the evidence required to support a criminal conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Instead, we consider only the evidence supporting the verdict and any reasonable inferences that can be drawn therefrom. *Morris v. State*, 114 N.E.3d 531, 535 (Ind. Ct. App. 2018), *trans. denied*. And we consider conflicting evidence most favorably to the verdict. *Silvers v. State*, 114 N.E.3d 931, 936 (Ind. Ct. App. 2018). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005. It is not necessary for the evidence to overcome every reasonable hypothesis of innocence; it is sufficient if an inference may reasonably be drawn from the evidence to support the verdict. *Silvers*, 114 N.E.3d at 936.

## B. Constructive Possession of a Firearm and Marijuana

[25] Muhammad first contends that the State presented insufficient evidence to support his convictions for unlawful possession of a firearm by a serious violent

felon and possession of marijuana.[4] Specifically, he argues that the State failed to prove that he constructively possessed a firearm and marijuana.

[26] To convict Muhammad of unlawful possession of a firearm by a serious violent felon as a Level 4 felony, the State was required to prove beyond a reasonable doubt that Muhammad, a serious violent felon, knowingly or intentionally possessed a firearm. *See* Ind. Code § 35-47-4-5(c) (2018). And to convict Muhammad of possession of marijuana as a Class B misdemeanor, the State was required to prove beyond a reasonable doubt that Muhammad knowingly or intentionally possessed marijuana (pure or adulterated). *See* Ind. Code § 35-48-4-11(a).

[27] A person actually possesses contraband when they have direct physical control over it, but "a conviction for a possessory offense does not depend on catching a defendant red-handed." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When the State cannot show actual possession, a conviction may rest on proof of constructive possession. *Id*. A person constructively possesses an item when they have both the capability and the intent to maintain dominion and control over the item. *Id*. Because there was no evidence that Muhammad physically

---

[4] Muhammad's argument with respect to his possession of a firearm focuses primarily on the State's failure to prove he constructively possessed a firearm with respect to Count II, carrying a handgun without a license. *See* Appellant's Br. at 23-25. However, the trial court vacated this conviction due to double jeopardy concerns when it entered judgment of conviction for Count I, unlawful possession of a firearm by a serious violent felon. *See* Appealed Order at 2. Nonetheless, Muhammad acknowledges that his argument and analysis for carrying a handgun without a license also applies to his unlawful possession of a firearm by a serious violent felon conviction. *See id.* at 25. Either way, the crucial question is whether Muhammad constructively possessed the firearms found in the vehicle.

possessed a firearm or marijuana, the State prosecuted Muhammad under a theory of constructive possession.

[28] "When constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband[, which] may be inferred from . . . the exclusive dominion and control over the premise containing the contraband[.]" *Woods v. State*, 471 N.E.2d 691, 694 (Ind. 1984). If the control or possession of the premises is non-exclusive, there must be evidence of additional circumstances pointing to the defendant's knowledge of the contraband. *Id.* Recognized additional circumstances include: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999). These circumstances are not exclusive and ultimately, the question is whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband. *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016).

[29] Here, Muhammad did not have exclusive possession of the vehicle because there were three other passengers in the vehicle at the time of the search. *Cf. Goliday v. State,* 708 N.E.2d 4, 6 (Ind. 1999) (holding that the defendant had exclusive possession of a vehicle when he was the only person in the car at the time he was stopped even though he alleged he had borrowed the car); *Holmes v.*

*State*, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003) (holding a defendant did not have exclusive control over a vehicle when he was merely a passenger). Therefore, evidence of "additional circumstances" pointing to Muhammad's knowledge of the nature and presence of the firearms and marijuana is required to support his conviction.

[30] Although Muhammad was not in exclusive possession of the vehicle at the time of the stop, testimony at trial revealed that hours before, he and Trail had an argument at their residence and shortly thereafter, he drove away in Trail's vehicle, which she allowed him to use "fairly freely[.]" Tr., Vol. II at 70. Trail testified that even though the vehicle belonged to her, she did not know where the drugs or guns came from. In addition, Muhammad was in close proximity to contraband, some of which was in plain view. Officers located a pipe containing burnt marijuana residue in plain view in the center console, which was next to Muhammad who was sitting in the front passenger seat. And the incriminating nature of the pipe was readily apparent, as Officer Salazar testified that he observed a "green rubber pipe with marijuana still in it." *Id.* at 35; *see Gray*, 957 N.E.2d at 175 (stating that a defendant's proximity to contraband in plain view supports an inference of intent to maintain dominion or control if the contraband's incriminating character is immediately apparent). Furthermore, while searching the passenger compartment of the vehicle, an officer bumped the glove compartment and one of the .22 caliber handguns fell from the compartment onto the passenger side floorboard – the same location where Muhammad sat in the vehicle.

[31] Based on this evidence, we conclude that a reasonable factfinder could infer that Muhammad knew of the nature and presence of the contraband and there was sufficient evidence to demonstrate that he constructively possessed a firearm and marijuana.

## C. Domestic Battery

[32] Muhammad also argues there was insufficient evidence to support his conviction for domestic battery. To convict Muhammad of domestic battery as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally touched Trail in a rude, insolent, or angry manner. *See* Ind. Code § 35-42-2-1.3(a) (2016). A person engages in conduct "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "Evidence of touching, however slight, is sufficient to support a conviction for battery." *Ball v. State*, 945 N.E.2d 252, 258 (Ind. Ct. App. 2011), *trans. denied*. The crux of Muhammad's argument is that he did not hit or touch Trail and he did not have the necessary intent to commit the offense. *See* Appellant's Br. at 27-28.

[33] The evidence most favorable to the verdict is that Muhammad and Trail were involved in an argument throughout the day on July 8, 2018. When Muhammad was stopped by police early the next morning, Trail went to the scene to retrieve her vehicle. When Trail arrived, Officer McCain noticed a discolored "lump on [her] forehead" and asked her what happened. Tr., Vol. II at 112. Officer McCain testified that Trail told him Muhammad threw a

Bluetooth speaker at her and it hit her in the head. This constitutes the requisite "touching" contemplated in the statute. *See Matthews v. State*, 476 N.E.2d 847, 850 (Ind. 1985) ("While battery requires defendant to have intended to touch another person, defendant need not personally touch another person since battery may be committed by the unlawful touching by defendant or by any other substance put in motion by defendant."). Trail also testified that her injury was painful and that the lump on her forehead lasted "[p]robably a week and a half." Tr., Vol. II at 72. A factfinder could conclude this evidence, taken together with all reasonable inferences therefrom, establishes that Muhammad knowingly threw a Bluetooth speaker at Trail in a rude, insolent, or angry manner that caused her injury. Muhammad notes that Trail recanted her statement to Officer McCain and testified at trial that Muhammad "threw a speaker across the room . . . not at me, I don't feel, but over towards my direction and it didn't hit me but I turned . . . and hit my head on the TV." *Id.* at 68-69. However, the jury was in the best position to hear all the evidence, weigh Trail's testimony, and make a determination of her credibility. We will not second-guess the jury's determination and to do so would require us to reweigh the evidence and judge witness credibility, which we cannot do. *See Bailey*, 907 N.E.2d at 1005.[5]

---

[5] Muhammad also argues that the State failed to prove that the offense occurred on the date alleged in the charging information. The State alleged that Muhammad committed battery "[o]n or about July 9, 2018" and Trail testified that the battery took place on July 8. Appellant's Appendix, Volume 2 at 18. "Where, as here, time is not an element of the offense, the State is not required to prove the offense occurred on the precise

# III. Inappropriate Sentence

[34] Muhammad contends that his sentence is inappropriate because neither his offenses nor his character warrants the sentence imposed by the trial court.

[35] Article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B). *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Sentencing decisions rest within the discretion of the trial court and should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[36] Generally, the defendant bears the burden of demonstrating his sentence is inappropriate under the standard, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.

---

date alleged, and its presentation of evidence is not limited to events on that date." *Blount v. State*, 22 N.E.3d 559, 569 (Ind. 2014). The State is only required to prove the offense occurred within the statute of limitations. *Poe v. State*, 775 N.E.2d 681, 686 (Ind. Ct. App. 2002) ("Under Indiana law, the phrase 'on or about June 23, 2000' clearly does not limit the State to only the events of June 23, 2000[.]"), *trans. denied*.

2006), and we may look to any factors in the record for such a determination, *Reis v. State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). Ultimately, "whether we regard a sentence as [in]appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

## A. Nature of the Offense

[37]    We begin our analysis of the nature of the offense with the advisory sentence, which is the starting point selected by our legislature as an appropriate sentence for the crime committed. *Reis*, 88 N.E.3d at 1104. Muhammad was convicted of unlawful possession of a firearm by a serious violent felon, a Level 4 felony. The sentencing range for a Level 4 felony is two years to twelve years with an advisory sentence of six years. *See* Ind. Code § 35-50-2-5.5. The trial court sentenced Muhammad to nine years – a sentence that is above the advisory sentence but below the maximum sentence allowed. Muhammad was also convicted of domestic battery and invasion of privacy, both Class A misdemeanors. A person convicted of a Class A misdemeanor shall be imprisoned for not more than one year. *See* Ind. Code § 35-50-3-2. On each count, the trial court sentenced Muhammad to 365 days, a sentence clearly permitted by statute. Last, Muhammad was convicted of possession of marijuana as a Class B misdemeanor. A person who commits a Class B misdemeanor shall not be imprisoned for more than 180 days, Ind. Code § 35-50-3-3, and here, the trial court sentenced Muhammad to 180 days. Notably,

the trial court could have sentenced Muhammad to a total sentence of fourteen and one-half years in the DOC. The trial court, however, sentenced him to eleven and one-half years in the DOC. Therefore, Muhammad's total sentence was not as lengthy as it could have been.

[38] The nature of the offense is also found in the details and circumstances surrounding the offenses and the defendant's participation therein. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Here, Muhammad and Trail got into an argument and he threw a Bluetooth speaker at Trail's forehead, which caused a discolored, painful lump on her forehead that lasted more than one week. Muhammad then left their home in Trail's car. Later, officers initiated a traffic stop and, after smelling marijuana, conducted a search of the vehicle and discovered marijuana and multiple loaded firearms. Although the nature of Muhammad's crimes is not particularly egregious, we are unpersuaded that the nature of his crimes warrants a lesser sentence. Muhammad has failed to demonstrate that the nature of his offenses renders his sentence inappropriate.

## B. Character of the Offender

[39] "A defendant's life and conduct are illustrative of his or her character." *Morris*, 114 N.E.3d at 539. One relevant factor in assessing character is a defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*.

[40] Here, Muhammad's extensive criminal history began in 1993 when he was adjudicated a delinquent child for acts that, if committed by an adult, would constitute possession of a stolen vehicle. His adult criminal history consists of four felony convictions and three misdemeanors, several of which were convictions for crimes related to the instant offenses, namely carrying a handgun without a license, illegal possession of ammunition, and domestic battery. Muhammad's criminal history illustrates a blatant disregard for the rule of law and shows that despite his frequent contact with our criminal justice system, he was not deterred from committing the instant crimes. *See id.*

[41] Further, the record reveals that Muhammad has a history of mental illness and substance abuse. At the sentencing hearing, Muhammad testified that he was addicted to heroin and methamphetamine and on July 9, he received a call from Hill, from whom he typically got drugs, informing him that Hill had been in a car accident and needed help. *See* Tr., Vol. II at 167. Muhammad stated he "sprung to action[,]" in part, because he "figure[d he] could get [illegal drugs] for free if [he] help[ed] and save[d Hill] out of this situation." *Id.* Therefore, Muhammad's involvement in the instant offenses, to some extent, was driven by his need to fuel his addiction illustrating that, despite his extensive criminal history, he continues to struggle with substance abuse and associate himself with people who are involved with illegal drugs.

[42] Muhammad does not offer clear examples of his good character. Although Muhammad has an associate degree and has maintained employment, neither

amount to compelling evidence that his character is so positive as to warrant a reduction in his sentence.

[43] Considering the nature of Muhammad's offenses and character, we are not persuaded that his sentence is inappropriate. Therefore, his eleven and one-half year aggregate sentence is affirmed.

# Conclusion

[44] Muhammad's rights were not violated under the Fourth Amendment to the United States Constitution or Article 1, section 11 of the Indiana Constitution and therefore, the trial court did not abuse its discretion in admitting evidence obtained from the search of the vehicle. We also conclude the State presented sufficient evidence to support Muhammad's convictions and his sentence is not inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm.

[45] Affirmed.

May, J., and Vaidik, J., concur.